Plaintiff and defendant married in Greenfield, Massachusetts, on June 27, 1964, precisely twenty-seven years ago. It was the first marriage for each. Plaintiff has resided continuously in this state for the past twelve months. Neither are the recipients of public assistance from the State of Connecticut or of any governmental subdivision.
None of the children of this marriage are under the age of eighteen.
The parties stipulated that their marriage has broken down irretrievably. They stipulated that testimony would be limited to financial issues. They specifically eliminated consideration of marital fault — an approach to dissolution this court would recommend to our state legislature. Marital fault is generally an attempt to gain financial advantage, an attempt that most often fails. It rarely benefits the party publicizing the indiscretions and generally serves only to magnify the bitterness of their divorce experience and to intensify the negative impact of that divorce upon their children.
Much to their credit, and to the credit of the professionalism of their counsel, the parties further stipulated as follows:
1. Defendant husband is to receive title to the three commercial properties in Massachusetts, located in Deerfield, Birnie and Liberty, CT Page 4839 carrying a total value of $1,497,500. The mortgage debt is agreed to be $1,190,000, resulting in a stipulated equity of $307,500.
2. Plaintiff wife is to receive the family home at 1203 Hills Street Suffield, Connecticut. It is valued at $285,000 with a mortgage of $67,000, resulting in stipulated equity of $218,000.
3. Plaintiff wife is to receive the acreage in Greenfield, Massachusetts, being approximately twelve acres and carrying a stipulated valued of $40,000.
4. Plaintiff wife is to receive a promissory note signed by Lawrence Perry, which note calls for payments of $896 a month until July 1, 1993. The Perry note is stipulated by the parties to have a value of $25,000.
5. Plaintiff wife is to receive personal property stipulated to have a value of $35,000, an automobile stipulated at $5,000 and her IRA stipulated $6,000.
6. Thus, defendant husband shall receive assets of $307,500, plaintiff wife shall receive assets of $318,000.
7. The value of the "rolling stock" of Roger Sitterly and Sons, Inc. and Anderson-Benson Corporation was stipulated at $179,540.
8. The oriental rugs in storage in the Springfield, Massachusetts, facility shall be turned over to Plaintiff within thirty days of judgment.
9. The $100,000 line of credit is debt against the value of Roger Sitterly and Sons, Inc., and Anderson-Benson Corporation.
10. Pendente lite alimony arrearage as of June 13, 1991 is $1,750.
11. Defendant shall have the following personal property:
 Bread board pine table, pictures painted by defendant's mother, pine slipper rocker, Lincoln rocker, candlestick table, antique mirror, clothes, books, records, personal papers, photographs — CT Page 4840
 defendant, at his cost, will duplicate photographs desired by plaintiff. All remaining personal property of parties' son, Nathan, including clothes, personal items, furniture, books and the like.
Though admirable in their ability to negotiate agreements regarding a very substantial number of issues, the parties have been unable to reach an accord about alimony or about the valuation of the two marital corporations, Roger Sitterly and Sons, Inc. and Anderson-Benson Corporation. It has been agreed between the parties, however, that plaintiff wife is to receive one-third of the corporate assets and defendant husband is to receive two-thirds of those corporate assets, thus once again civilizing the process by limiting the war.
A substantial discordant note in this otherwise civilized hearing has been Mr. Sitterly's cynical manipulation of family and corporate assets to create a most substantial personal cache of hidden tax free income by means of his corporate officer's loan account. He couched all his comments in such a manner as to obscure the existence of that account, which had its beginnings in a second mortgage on the family home. The mortgage proceeds soon disappeared, only to reappear as a source of what became substantial tax free withdrawals by Mr. Sitterly from the marital corporations during 1989 ($183,000) and 1990 ($114,500) while Mr. Sitterly was claiming comparative poverty and seeking to minimize his alimony payments. It is well to note that the marital corporations were capable of generating these substantial withdrawals during the past two years. The circumstances lead the court to find Mr. Sitterly to be the less credible of the two spouses with regard to financial issues and to effect the court's view of the situation of the marital corporate entities.
The court was offered the testimony of three experts in an attempt to assist it in the valuation of the marital corporation, Messrs. William Ryan (hired by Mrs. Sitterly), Thomas Themistos (corporate accountant for the entities in question and personal accountant to Mr. Sitterly) and Paul Boudo (hired by Mr. Sitterly). Mr. Ryan, hired by Mrs. Sitterly and presented as her sole evaluation witness, testified that the corporate entities had a value of $720,608. Mr. Boudo found values ranging from $278,000 to $400,000. This court found Mr. Ryan's credentials to be superior to those of the other CT Page 4841 experts and found him, further, to be the more credible of the witnesses.
One problem facing each of the expert witnesses, as well as this court, is that this attempt to reach a fair and appropriate value for these marital assets occurs during a period of recession that both parties acknowledge has had a serious, if temporary, impact on the national economy and an even greater impact on the New England economy. The principles and each of their experts acknowledge that the parties' moving and storage industry is not doing well, largely as reflection of the static real estate industry. It is also agreed that both are likely to improve substantially when the next upward economic cycle takes hold, but there is no agreement as to how soon that happy circumstance will occur.
Although Roach vs. Roach 20 Conn. App. 500 at 508 (1990), tells us "assets are valued as of the date of dissolution", Turgeon vs. Turgeon190 Conn. 269 (1983), advises that closely held corporate stock, and the subject marital corporations are clearly such closely held assets, cannot be valued through any inflexible formula. Future prospects are clearly one element of many respected formula as are current market value, prior earnings, cash flow, depreciation assets, book value, excess earnings, capitalization of earnings, projections of future cash flows and adjusted earnings, all of which were cited by one or all of the experts during their extended testimony.
Having reviewed the evidence and the sworn financial affidavits of each party in the context of the required considerations set forth in Title 46b, Chapter 815j of the Connecticut General Statutes, a finding shall enter that the marriage has broken down irretrievably, a decree of dissolution shall enter and the following order shall apply:
1. REAL ESTATE
a. Husband's interest in 1203 Hill Street, Suffield, Connecticut, is hereby transfered to plaintiff wife pursuant to C.G.S. 46b-81(a).
b. Plaintiff shall hold defendant harmless with respect to the mortgages, taxes, insurance and all costs associated with the Hill Street property.
c. Wife's interest in the parties' business properties in Greenfield, Massachusetts, on Birnie Avenue in Springfield, Massachusetts and on Liberty Avenue in Springfield, Massachusetts are hereby transfered to defendant husband pursuant to C.G.S. 46b-81(a).
d. Defendant shall hold plaintiff harmless with respect to the mortgage, taxes, insurance and all costs associated with said Greenfield and Springfield properties. CT Page 4842
e. Husband's interest in the parties' unimproved lot in Deerfield, Massachusetts, is hereby transfered to plaintiff wife pursuant to
f. Plaintiff shall hold defendant harmless with respect to the mortgage, taxes, insurance and all costs associated with the Hill Street property.
PERRY MORTGAGE NOTE
g. Full title to that certain Lawrence Perry note is to be transferred to plaintiff wife.
PERSONAL PROPERTY
h. Title to all personal property located in the family home, as well as the oriental rugs now stored in the Springfield, Massachusetts corporate facility and the 1983 Mercedes Benz is to be in plaintiff.
i. Title to the personal property listed in paragraph 11, above, shall be in defendant.
CORPORATIONS
j. defendant husband is to have 100% of the stock of Roger Sitterly and Sons, Inc. and Anderson-Benson Corp.
k. The "rolling stock" of the two corporations is valued at $179,540.
l. The $100,000 line of credit is a debt against the value of Roger Sitterly and Sons, Inc. and Anderson-Benson Corporation.
m. the reasonable value of the marital corporate assets, Roger Sitterly and Sons, Inc. and Anderson-Benson Corporation, is found to be $585,000. Plaintiff wife's agreed share is one-third, or $195,000.
n. Defendant husband shall execute a mortgage and note in favor of the plaintiff wife in the amount of $195,000 at eight percent interest per year. The mortgage securing this note shall be placed on the three business properties one in Deerfield, Massachusetts, and those on Birnie Avenue, and Liberty Avenue in Springfield, Massachusetts. This mortgage note shall carry interest only, payable monthly until October 1, 1993, whereupon the mortgage balance shall be amortized in equal monthly payments over a period of sixteen years.
o. Plaintiff shall subordinate the lien of the mortgage to a federal or state licensed lending institution in order to permit an arm's length bona fide refinancing of the $1,160,000 debt on the corporate property to a new total not to exceed $1,170,000. CT Page 4843
ALIMONY
p. Defendant husband shall pay plaintiff wife the sum of $500 per week as periodic alimony until plaintiff's sixty-second birthday, the death of either party or plaintiff's remarriage, whichever shall first occur. If the mortgage detailed in paragraph n, above, has been paid in full at that time alimony shall cease. If the mortgage has not yet been paid in full, alimony shall continue at $1 per year until the final mortgage payment. Husband's filing of bankruptcy or loss of any of the mortgaged properties by foreclosure shall be a basis for modifying the alimony award.
MEDICAL INSURANCE
q. Defendant shall maintain his current medical insurance program, or its equivalent, for his wife for three years and shall pay one-half of the cost there of until June 27, 1994, or until plaintiff has full-time employment, whichever shall first occur.
ALIMONY ARREARAGE
r. Defendant's alimony arrearage of $1,750 shall be paid within ninety days.
LIFE INSURANCE
s. Defendant shall maintain irrevocably $100,000 insurance policy on his life for the benefit of the plaintiff as long as he has an alimony obligation to her.
DEBTS
t. Each of the parties shall be responsible for the debts listed in their financial affidavits and shall hold the other party harmless and indemnified from:
Plaintiff:
Connecticut National Bank: . . . . . . . . . . . . . . . . . $20,000.
Attorney William Forbes: . . . . . . . . . . . . . . . . . . $15,000.
Attorney Gerald Roisman: . . . . . . . . . . . . . . . . . . $2,200.
Bednaz: $175; Visa: . . . . . . . . . . . . . . . . . . . . . $4,800.
Krupa Oil: . . . . . . . . . . . . . . . . . . . . . . . . . $900.
Suffield taxes: . . . . . . . . . . . . . . . . . . . . . . . $4,093. CT Page 4844
William Ryan, CPA: . . . . . . . . . . . . . . . . . . . . . $4,400.
Defendant:
Bank of New England: . . . . . . . . . . . . . . . . . . . $100,000.
Bank of New England Visa: . . . . . . . . . . . . . . . . . . $2,000.
American Express: No amount listed.
Auto loans co-signed for Liza: . . . . . . . . . . . . . . . $8,000.
Anderson and Benson: . . . . . . . . . . . . . . . . . . . . $15,000.
Officer loan account — Sitterly: . . . . . . . . . . . . . . $35,000.
Loan from defendant's mother: . . . . . . . . . . . . . . . . $20,000.
Property taxes, Springfield, Deerfield: . . . . . . . . . . . $40,000.
ATTORNEYS' FEES
u. Each party shall be responsible for the respective counsel fees and costs.
FURTHER NEGOTIATION
v. Because the parties have shown a commendable capacity to negotiate issues in the past, and because the court recognizes that the parties themselves may have mutual preference, that have not been revealed to the court during trial, and because final divorce terms established by the parties themselves are historically more comfortable for the parties to live with and abide by, the court notes that, though the basic terms have been established by the court, plaintiff is free to vary those terms should she find it appropriate to do so after negotiation and agreement with defendant. Any such mutually negotiated modification is to be submitted directly to this court for its approval within thirty days of this judgment without costs and without the need to establish a substantial change of circumstances. Beyond that date, modification shall be by the more traditional route and must meet the more formal requirements.
JOSEPH L. STEINBERG, JUDGE.