[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a retrial on the issues of alimony and distribution of assets of an action for dissolution brought by the plaintiff husband against the defendant wife. The original judgment in the matter was reversed by the appellate court on the issues of alimony and distribution of assets. The dissolution which was granted by the first trial court was not overturned.
The parties were married in 1953. There were six children of the marriage as follows : Jan born October 31, 1954, Paul born November 20, 1955, Kerry born February 19, 1957, Christopher born August 19, 1959, Susan born September 23, 1961, and Mary Pat born March 13, 1965. All are adults at this time. One, Paul, is a diagnosed schizophrenic living on Social Security disability benefits and residing with the defendant in the marital home.
The plaintiff is 59 years old and the defendant is 61 years old. This was a stormy marriage with several separations beginning as early as the first year of the marriage according to the testimony of Mr. Roach. The separations for a longer period of time began in 1958 when the plaintiff left the home for one year. At that time there were three children, ages 4, 3 and 1. Thereafter the plaintiff left again in 1962 for a year and a half. At that time there were five children, ages 8, 7, 5, 3, and 1. The last separation was in 1970 when Mr. Roach left the family home and has never returned. At that time there were six children, ages 16, 15, 13, 11, 9, and 5. CT Page 5176
During the early years of the marriage, the plaintiff attended college at the University of Connecticut and the defendant worked at various jobs to support the family along with whatever income the plaintiff could obtain from part time jobs. Since the first child was born in 1954 and the second in 1955, this meant the defendant was working while bearing children and taking care of them as well in 1954 and 1955. The plaintiff never finished his college after attending for three years because he received a job and decided not to return to finish his degree.
The problems with the marriage seem to be the result of a combination of things. On the one hand Mrs. Roach appears to have both mental and emotional problems early on in the marriage for which she sought help from hospitals and clinics (see exhibits 1, 2, 4, 5, 33 and 34). These records as well as the testimony indicate a total incompatibility between the parties with Mr. Roach exercising physical violence upon Mrs. Roach and both of them heaping verbal abuse on each other.
While Mrs. Roach has been diagnosed as suffering from depression, personality disorder, possible schizophrenia, and has, since 1981, been receiving Social Security disability benefits, Mr. Roach has clung to the belief that Mrs. Roach is perfectly capable of working and supporting herself. It also appears that the stresses of the marriage and the responsibility for caring for the children in her husband's absence have exacerbated the defendant's underlying problems if they did not create them.
Following Mr. Roach's departure in 1970, Mrs. Roach continued to work as a secretary for a number of years, as she had before, helping to support herself and her family. She stopped work in 1980 when she had a gall bladder operation and then never returned following the receipt of Social Security disability benefits in 1981. She is presently receiving these benefits and is not working nor does she seem, on the basis of all the diagnoses and of her demeanor on the stand, to be able to work.
The defendant has also been receiving a support order for the minor children which ended in 1986 when the youngest child, Mary Pat, turned 21, the age of adulthood for support orders in New York state. (See appellate court decision.)
The defendant is presently receiving alimony in the amount of $225.00 a week under a pendente lite order.
Some of the reasons for the incompatibility of the CT Page 5177 parties manifested themselves in the course of the testimony of both parties. The defendant was able to testify at some length, but she had difficulty with her memory, particularly short term; she had difficulty controlling herself both while she was on the stand and while she was sitting in the courtroom; and in general, presented a picture of anxiety coupled with a kind of childlike demeanor. While she drives herself on occasion, she needed someone to drive her to court, and she has had help from her daughter and friends with groceries and shopping. At the present time her mother lives with her.
In contrast, Mr. Roach appears to be totally self-confident and certain of the validity of his claims. He firmly believes his wife can and should be working and that, in effect, she is putting on an act.
He is now unemployed after his involuntary retirement from the company he worked for for 19 years, Technicon (1970 to 1989). Since his leaving Technicon, he has done some consulting according to the testimony of his daughter but he has not become regularly employed elsewhere. He has testified to networking in order to obtain a job, but he has not consulted employment services or head hunters for that purpose.
He has some physical disabilities having had a heart operation on two occasions and is presently on blood medication and medication for his heart problem. Both his age and his physical condition militate against his obtaining regular employment other than consulting which he has apparently done to some extent. On the other hand, his earnings at the time of his leaving Technicon were over $100,000.00 a year, a figure which must be considered in determining earning capacity but, at the same time, balanced with the factors of age and health.
While he has claimed to have no regular income, his bank deposits for two months in 1990 revealed deposits of substantial amounts, $18,000.00 in one month and over $11,000.00 in the second month. (See exhibits 26 and 27.)
He has also, since the separation, accumulated substantial assets. Beginning in January of 1971, he began to participate in the profit sharing plan at Technicon which provided for contributions from the company as well as from the employee. The balance in that account as of October 31st, 1989 was $177,572.95. He also received an inheritance from his mother's death in 1983 of some $74,000.00. In addition, he received a half interest in a cooperative apartment from his aunt in 1983. When the aunt died in 1987, he said he netted $122,000.00 from the sale of the cooperative. He received the full title upon his aunt's death since the title was held in CT Page 5178 survivorship. He also received $61,000.00 as severance pay when he left Technicon in November of 1989. Some of that money he used to pay down the mortgage on a cooperative he says he owns with his daughter Kerry. There were no documents produced to confirm this. The cooperative, according to his financial affidavit, is valued at $271,000.00 with a mortgage of $149,000.00 leaving a gross equity of $122,000.00 of which he claims to have a one half interest. He also has a lot in his name in Virginia valued at $11,000.00 which he claims he is holding in trust for his daughter. There is no mortgage on that lot. Again, there was no documentation to confirm his testimony with respect to his interest. He also shows on his financial affidavit savings accounts in the amount of $7,300.00 in the Bank of New York and three cars with a total value of $2,550.00.
The only asset owned by the defendant is her one half interest in the marital home and the adjoining lot. This house and adjoining lot have been considered as one unit by both parties until the plaintiff's affidavit of October, 1990. In his October, 1990 affidavit, the plaintiff valued the second lot (number 60) at $90,000.00. The defendant's appraiser also appraised the second lot but at $61,000.00, and he pointed out that should the lot be sold there would need to be a common driveway with the adjoining lot since the driveway to the garage on lot 59 (on which the marital home stands) encroaches on lot 60. (See exhibit 30.)
The court finds the appraisal of the house and lot of the defendant's appraiser more reasonable given the condition of the house and the need for the common driveway. (See exhibits 16, 17, 18 to 22 and exhibit J.) Consequently, the court finds the value of the marital home to be $171,000.00 and that of the lot $60,000.00.
The plaintiff also has IRAs in the amount of $23,000.00 and the balance of a probate inheritance from his aunt of $18,000.00. He values his total assets at over $510,125.00 and his liabilities at $32,600.00. (See plaintiff's financial affidavit dated October 3rd, 1990.)
While the plaintiff has claimed that the defendant is entitled to none of the assets he has accrued since the separation, the court disagrees. During the time the plaintiff was out of the home, the defendant maintained the home for herself and the minor children. The youngest child became an adult under New York law in 1986 when the support order for her ceased. (See appellate court opinion, Roach v. Roach, 20 Conn. App. 500,508 (1990).
Having considered all of the factors set forth in CT Page 5179 Connecticut General Statutes 46b-81 and 46b-82, the court makes the following findings and orders:
1. The parties were married in 1953, had broken down irretrievably and was dissolved in 1988.
2. There are no minor children issue of this marriage.
3. One of the parties resided in this state for one year prior to the institution of this action. The court, therefore, has jurisdiction.
4. The court finds that the breakdown of the marriage was incompatibility and not the fault of either party.
5. The plaintiff shall pay the defendant $225.00 a week alimony until her death, remarriage or cohabitation.
6. The plaintiff shall also pay to the defendant the sum of $70,141.32 representing the defendant's 79 per cent interest in one half of the savings plan which the plaintiff has accumulated between 1970 and 1989, a total of 19 years. During 15 of those years, the defendant was maintaining the house for herself and the minor children.
7. The plaintiff shall convey to the defendant all his right title and interest in the marital home on lot 59 in Mount Kisco, New York. He shall also pay the mortgage and other liens presently on that property.
8. Lot number 60, the lot adjacent to the marital home, lot number 59, shall be sold and the net proceeds divided equally between the parties. Net proceeds means the gross sales price less closing costs, attorney's fees, commission, current mortgage and taxes and any other liens on the property. To effectuate this sale, the parties shall either agree on a single broker or each pick a broker who together will pick a third broker to determine the asking price and the selling price of the property. That broker shall also make the decision as to when the asking price shall be lowered and at what price, ultimately, the property may be sold.
9. The plaintiff will keep the three cars presently in his name, the bank accounts in his name and all the other assets in his name including the savings account in the Bank of New York, and the IRA accounts and the remainder of his probate inheritance.
10. The plaintiff shall also contribute to the defendant the CT Page 5180 amount of $15,000.00 for her attorney's fees, guardian ad litem fees and court costs.
11. As security for the alimony ordered herein, the plaintiff shall provide the defendant with a mortgage on his Crotan Avenue property in Mount Kisco in the amount of $60,000.00 payable on demand and without interest, with the demand conditioned upon the failure of the plaintiff to comply with the court's order with respect to alimony payments. 12. Since there are no wages earned by the person paying alimony, no wage execution will issue.
It is so ordered.
MARGARET C. DRISCOLL STATE TRIAL REFEREE