[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 1261
I. On December 23, 1993 this court found that all of the allegations of plaintiff's complaint had been proven, that the marriage had broken down irretrievably, and the marriage was ordered dissolved on that date for that reason.
II. Issues to be Determined Prior to the Establishment of the Marital Estate.
A. The Determination of the Status of Certain Property Claimed by the Parties as Not Part of the Marital Estate.
1. Plaintiff's Inheritance from her Mother.
During the course of the marriage plaintiff inherited money from her deceased mother's estate in the amount of $53,098. This sum, presently on deposit in Fleet Bank, was properly listed among plaintiff's assets on her financial affidavit. Because of the source of the funds, the absence of any contributions on defendant's part to their acquisition and the continued maintenance by plaintiff of its separate identity since receiving it, this inheritance is held not to be a part of the marital estate of the parties.
2. Defendant's Gift of a Building Lot from His Grandmother.
This court reasons that a gift from a grandparent to his grandson and his granddaughter-in-law in joint tenancy should be considered marital property of the parties since it reflects the partnership aspect of marriage where each spouse should be entitled to an equitable share of the marital estate. While the source of the gift may be considered when examining the "contribution of the parties" factor in Sec. 46b-81c C.G.S,. the gift to both parties nevertheless should be included as part of their marital estate for distribution purposes. See L. Golden Equitable Distribution of Property, pp. 119-121 (1983).
B. The Determination of the Value of Defendant's Interest in his Law Firm.
Alex Bobrow, a certified public accountant, in testifying for the plaintiff, considered the past income of CT Page 1262 the firm as reflected in its tax returns together with its accounts receivable. He valued defendant's interest in his law firm at $936,429.
In response, Martin T. Price, also a certified public accountant, in his testimony on behalf of the defendant, concluded that on the basis of the defendant's employment contract with his firm his interest was limited to the value of firm stock owned by him (1200 shares at $1.00 per share) or $1,200.
This court finds that the value of defendant's partnership interest is controlled by an Employment Agreement and Stock Agreement executed by him and the firm on December 28, 1988. (See Defendant's Exhibits 4 and 5).
Paragraph 8(f) of the employment agreement provides that in the event defendant's employment is terminated, he will receive accrued compensation to the date of termination, together with any life insurance benefits in effect at that time. Paragraph 8(g) further provides that defendant will also receive title to any firm automobile used by him at that time. Paragraph 8(f) concludes by stating that "said payment of compensation plus any transfer of the automobile. . . . shall be in full satisfaction of Employer's obligation to Employee under this agreement or otherwise . . . and Employer shall not be liable to Employee for any other payment, consideration or benefit of any kind whatsoever."
The stock agreement provides that if the employment of one of the partners is terminated for any reason, he shall sell all of his stock in the firm to it for $1.00 per share. The defendant owns 200 shares of Class A stock and 1000 shares of Class B stock.
On all of the evidence, it is concluded that the value of defendant's interest in his law firm is limited under the terms of the employment and stock agreement to the value of his stock in the firm, which is found to be $1200.
III. Marital Estate of the Parties:
Plaintiff (wife):
#207 Dartmouth Rd., Manch. Value $250,000 CT Page 1263 Mtg. 97,672 -------- Total Equity $152,328 Plaintiff's 1/2 int. $76,164 1987 Acura 3,000 1989 Mercedes 560 S.L. 30,000 Fleet M.M. 78,270 Fleet M.M. ($53,098 — inheritance) ------- S.B.R. (1/2) 239 Fleet Checking Account 2,540 Life Insurance (C.S.V.) 1,555 IRA — Fleet 230 IRA — S.B.R. 2,055 Glenbrook Swim Club — Bond 500 Household furniture ------- Total $194,553
Defendant (Husband):
 1/2 Ins. in #207 Dartmouth Rd., Manchester, CT $76,164
 West Rd., Ludlow, VT Value $149,500 Mtg. 123,793 ------- Equity 23,707 #101 Foote Rd. Value 640,000 Glastonbury, CT Mtg. 443,266 ------- Equity 196,734
 1986 Porche 8,500 1993 H/D Motorcycle 12,000 1993 H/D Springer M/C — equity 269 Household Furniture ------ Bank Accounts 6,449 Sav. Bank of Rockville (1/2 see plaintiff's F.A.) 239 Art work 40,000 Money fund 7,462 Municipal bonds and notes 21,343 Stocks — Paine, Webber 435,832 Life Insurance (C.S.V.) 79,996 IRA 28,001 401K 53,703 CT Page 1264 D.T.L.N. profit sharing 70,300 Limited Partnership Interests 286,691 Interest in law firm 1,200 ---------- Total $1,348,590
Total Marital Estate of the Parties $1,543,143
IV. The Evaluation of the Evidence in Accordance with the Provisions of Section 46b-81c C.G.S.
The plaintiff wife and the defendant husband, both of whom are forty-six years old, were married on September 11, 1971, twenty-two years ago. They have two children, a daughter Jacqueline age twenty, who attends college, and an adopted son Justin who is fourteen years of age. Justin has cerebral palsy as well as other physical problems. His condition and its bearing on the family will be discussed later in greater detail.
The parties met at Cape Cod, Massachusetts, during the summer of 1969. At the time, plaintiff was a registered nurse, having recently completed her training at a hospital in Worcester. Defendant had shortly before graduated from the University of Connecticut and was preparing to enter Suffolk Law School that autumn. Plaintiff moved to Boston and the parties dated for two years before marrying. Describing his feelings at the time, plaintiff stated "I just fell in love with Ted. I found him to be extremely intelligent. It was just something that happened." The parties first lived in a one-bedroom apartment in Boston. Plaintiff, at the time, was a nurse at Newton Wellesley Hospital, and defendant, as well as attending law school, was a janitor at Filene's on weekends. After defendant graduated from law school in 1972 he entered the United States Air Force where he performed duties of a legal nature for four and one-half years in such places as Michigan, Guam, and New Hampshire. During this period their daughter was born, resulting in plaintiff's undergoing an emergency hysterectomy. In 1977 defendant was honorably discharged, the couple moved to Vernon, Ct. and defendant commenced employment as an associate at the law firm of Dannaher, Lewis and Tammony, earning $17,000 per year. In October 1979 the parties commenced adoption proceedings for Justin which were finalized about a year later. Since the birth of their daughter, plaintiff has been occupied full time CT Page 1265 with her duties as a housewife and mother.
The parties separated on September 28, 1985, and in 1988 defendant commenced a dissolution action in Tolland Superior Court which was withdrawn about a year later. After an unsuccessful attempt at reconciliation by the parties, plaintiff commenced the present action on September 24, 1990, more than three years ago.
As indicated previously, plaintiff has not been employed since the birth of her daughter twenty years ago. She nevertheless remains a properly licensed registered nurse. Defendant's accountant testified that nurses with similar qualifications could reasonably expect to earn $20 per hour for hospital duty and an even higher hourly rate for duty in a technical or private area.
Defendant in turn has enjoyed extraordinary success in the practice of law, having been principally employed for the past several years for the defense in asbestos litigation. At the time of his separation from plaintiff in 1985, he was earning a gross of $81,000 per year. His income increased dramatically thereafter, being $709,271 in 1990 when this action was instituted, $1,067,918 in 1991 and $904,172 in 1992. His current financial affidavit indicates a gross weekly income of $17,778 with a weekly net after the usual deductions of $9,845. His weekly federal withholding of $6,646 was felt to be excessive by plaintiff's accountant who testified that with alimony and other deductions being considered, it should more properly be $4,265, with a resulting increase in defendant's net weekly income.
Defendant, on the evidence, clearly has a far greater opportunity than does plaintiff for the future acquisition of capital assets and income.
HEALTH
Plaintiff underwent a previously noted hysterectomy twenty years ago, but is presently in apparent good health.
Defendant has in the past received treatment for an alcohol problem and for depression, but he too is in apparent good health. CT Page 1266
FAULT
It should be stated at the onset that there is no evidence on the part of either party of physical mistreatment, abusive language or infidelity during such time as the parties were living together. Defendant has admittedly been intimate with other women since the separation in 1985, and this discovery by plaintiff in 1990 led to the breakdown of reconciliation attempts and precipitated the present action.
Responsibility for the breakdown of the marriage in plaintiff's view centered principally on defendant's excessive use of alcohol combined with his generally unhappy or depressed state of mind and, at the end, long after their separation, because of his involvement with another woman. In plaintiff's words "I first became acutely aware of problems with the marriage in 1983. He started seeing a psychiatrist because he wasn't happy." On September 28, 1985, nine months after the family had moved into a new home they constructed in Manchester, Ct., defendant vacated the premises, telling plaintiff at the time that there was something wrong inside of him. Plaintiff testified that he was having crying jags and was abusing alcohol at the time. After the separation, the parties continued to see each other.
In the spring of 1989 the parties began counseling together, and prospects for a reconciliation brightened. Defendant gave plaintiff a Rolex watch in September, 1989, purchased a new bedroom set for her during that period, and in October, 1989, presented her with the keys to a $60,000 Mercedes. He had meanwhile purchased a vacation home in Vermont which the couple visited. During this period they resumed marital relations. On Labor Day, 1990, however, all chances for a permanent return to their former marital relationship ended when plaintiff learned of defendant's involvement with another female. This action was instituted within the month.
The court observes at this juncture that defendant's permanent departure from the family home in September, 1985 left plaintiff to carry almost alone the burden of caring for two minor children, one of whom had been adopted by them in happier times and who suffered physical handicaps requiring an unbelievable amount of care. CT Page 1267
Defendant was forthright in recounting the reasons the marriage failed. He began by making a general statement that he agreed with his wife's testimony. With reference to the two year span between 1983 and 1985 he said "I sensed a distancing between us during this period. I noticed that the intimacy we once shared was breaking down, was dissolving. We'd go on trips, but there was a lot of silence between us when we were together. I discussed this with her, also our sexual relationship which had become more sporadic." Concerning fault for their marital problems he added "I don't blame either of us for the breakdown — there was no specific action that I was aware of — there just developed between us a distance." With reference to the dissolution action begun by him in 1986 and withdrawn in 1988 he testified "Since 1983 I've had a lot of guilt about the whole process. In 1988 I thought it was worth a chance to reconcile. She started the action again in 1990." He candidly admitted having a problem with alcohol and has sought help for it. He concluded his testimony on this subject as follows: "The long period of separation has been difficult for everybody."
After considering all of the evidence on the issue of cause for the breakdown of the marriage, this court that it was brought about by the actions and conduct of the defendant.
JUSTIN (by way of background)
The parties began the process of adopting Justin in October, 1979 when he was one month old. At the time he was supposedly a healthy child, Within a short time, however, it was noted that his progress was slow in sitting and standing, and at thirteen months he was diagnosed as having cerebral palsy, an incurable disease. He is also spastic, has several visual problems and is legally blind. Starting in 1980 Justin was brought by plaintiff to Newington Children's Hospital three times a week, and a series of home exercises were prescribed for him.
A typical day in Justin's life was described by plaintiff as follows:
"I'll serve him breakfast in bed. I do his braces. I put on his clothes, give him a four joint crutch, put him on the toilet, brush his teeth, dress him. I put him in a wheelchair CT Page 1268 and push him down the driveway to the school bus. Twice a week I take him to the hospital where he swims. We're home from the hospital at 6:15 P.M. He can feed himself. After supper I help him with his homework. Because of his bad vision I have to read his math problems to him. Later I help him with his shower, undress him and help him into bed."
Looking into the future plaintiff spoke of Justin as follows: "I can see him graduating from high school, I don't see any drastic physical changes for him in the future. Because of his vision problems he uses tapes and large print books. In ten years I hope he is through college, I'd like to see him with his peers in an independent living facility. He won't be able to drive because of his vision. Right now he has an aide full time in school who organizes his papers and writes down his math problems. He types with one finger and as a result it takes time for him to type things out. At the present time (defendant) has Justin one evening a week and every other weekend. In the summer of 1992 they went to California for two weeks."
In the summer Justin attends an Easter Seal camp and a day camp. Plaintiff described defendant as having a warm relationship with Justin. She mentioned that the school aide's salary is paid by the Board of Education for the Blind and that Justin receives a Title 19 medical subsidy. She described the goals of the future for Justin as follows: "We both want Justin to be as independent as possible in the future."
Defendant, while not nearly as involved as plaintiff in caring for Justin on a daily basis, nevertheless presents himself to the court as one who is now and has always been equally concerned for Justin's welfare. With reference to the decision of the parties knowingly to adopt a physically handicapped child he stated: "We felt we could give Justin as good a home as anybody." How right he was.
Defendant is a director of the United Cerebral Palsy Association of Greater Hartford and has involved Justin in many of their recreational programs. He impressively described cerebral palsy as a non-curable, non-progressive deadening of the cerebellum which occurs at or before birth. He stated also that Justin's visual problems have lessened somewhat over the years but that he did not anticipate further CT Page 1269 improvement. He described Justin presently as being on the honor roll in eighth grade, having an excellent vocabulary and wanting to attend college where his interest in communications could be developed. He too would like to see Justin in an integrated disabled environment independent from his parents. Concerning the possibility of plaintiff seeking employment following the dissolution, defendant states: "It would be difficult now. In the future it would be alright as long as Justin's needs were provided for." For the past two years Justin has been with the defendant for two weeks in the summer and one week in the winter.
The parties have entered into a minority and post-majority agreement concerning Justin which will be set forth later in this decision.
OTHER FACTORS.
Concerning the contribution of the parties in the acquisition, preservation or appreciation in value of their marital estate, defendant in his argument brief stresses that O'Neill v. O'Neill, 13 Conn. App. 300 (1966) is not applicable "since most of the assets were acquired after the separation and said acquisition was not related to the marital partnership. " The court is aware of the ruling in Papageorge v. Papageorge, 12 Conn. App. 596, 600 (1987) where in a dissolution granted after the parties had been separated for twenty-five years the court's failure to award the wife any part of the estate acquired by the husband after the separation was upheld. This court, however, is more persuaded by the holding in Roach v. Roach, 20 Conn. App. 500, 308 (1990) where the factual situation was strikingly similar to that before this court. In Roach, the parties had been separated for sixteen years, the wife cared for a mentally incapacitated son and the husband contended she should not share in assets acquired by him subsequent to the separation. The Roach court gave nodding recognition to the holding in Papageorge but added (p. 308) that "a court is not prohibited from awarding one spouse a share in the other's assets no matter when acquired, even if the acquisition occurs after a separation. This is for two reasons. First, the nonmonetary contribution of one spouse, such as the primary care of children and the upkeep of the family home may have enabled the other spouse to acquire or to retain assets. O'Neill v. O'Neill, supra, 317, and such contribution can continue after CT Page 1270 the parties' separation. Second, assets are valued as of the date of dissolution, rather than as of the date of an earlier separation. Zern v. Zern, 15 Conn. App. 292, 296 (1988)."
This court is mindful both of the extraordinary care provided Justin by plaintiff through the years over and above the normal and customary duties of a housewife and mother of two children and also of the spectacular success defendant has enjoyed in his profession, particularly since his separation from plaintiff in 1985.
On all of the evidence it is found that the parties contributed equally in the acquisition, preservation or increase in value of their present marital estate.
After carefully reviewing and weighing all of the evidence as it relates to Sec. 46b-81c C.G.S. and after giving particular consideration to such predominating factors as the variation in the income of the parties, their comparative opportunities for the future acquisition of capital assets and income and to a somewhat lesser degree, the causes for the breakdown of the marriage, this court orders that the marital estate of the parties be divided as follows:
Plaintiff 54%
Defendant 46%
V. The Distribution of the Marital Estate in Accordance with the Findings made in Articles II, III and IV.
Plaintiff 54% $833,297
 Whole interest in equity in #207 Dartmouth Rd., Manchester, Ct $ 152,328 1987 Acura 3,000 1989 Mercedes 560 S.L. 30,000 Fleet M.M. 78,270 Fleet M.M. ($53,098 inheritance) ------- Fleet Checking Account 2,540 Life Insurance (C.S.V.) 1,555 I.R.A. Fleet 230 I.R.A. Savings Bank of Rockville 2,055 Savings Bank of Rockville 478 Glenbrook Swim Club — bond 500 CT Page 1271 Defendant's municipal bonds and notes 21,343 1/2 defendant's Paine-Webber stock 217,916 1/2 defendant's limited partnership interests 143,345 Defendant's 401K 53,703 Defendants I.R.A. 28,001 Balance due plaintiff from defendant 98,033 ------- Total Due Plaintiff $833,297
Defendant 46% $709,846
 Whole interest in equity in # 101 Foote Rd., Glastonbury, CT $196,734 Whole interest in equity in West Rd., Ludlow, VT. 23,707 1986 Porche 8,500 1993 H/D motorcycle 12,000 1993 H.D. Swinger M/C — equity 269 Household furniture ------ Bank accounts 6,449 Art work 40,000 Money market fund 7,462 1/2 Paine-Webber stock 217,916 1/2 Limited partnership interests 143,346 Life insurance (C.S.V.) 79,996 D.T.L.V. profit sharing 70,300 Interest in law firm 1,200 ------- 807,879 Less amount due plaintiff — 98,033 ------- Total due Defendant $709,846
IV. Supplemental Orders Related to the Distribution of the Marital Estate:
A. Defendant is ordered to convey to plaintiff all of his right, title and interest in premises situated at #207 Dartmouth Rd., Manchester, CT. Plaintiff in turn will hold defendant harmless with regard to all mortgages, taxes and other encumbrances on said property.
B. This court has considered it more prudent simply to order that defendant pay plaintiff the sum of $98,033 rather than to further disturb his existing assets, thus permitting CT Page 1272 him an election as to the source of the funds.
The payment of said sum, together with the transfer of any securities or other personal property from defendant to plaintiff shall be completed within forty-five days from date hereof. If said payment has not been made to plaintiff within that time, defendant shall execute a demand note to plaintiff for said amount. Said note shall bear interest at 8 per cent per annum from that date and shall be secured by a mortgage on premises known as #101 Foote Rd., Glastonbury, Ct.
C. The parties shall execute all documents necessary to comply with the order of this court.
VII. Orders Concerning the Minor Child — Justin
A. Custody:
(1) The plaintiff and the Defendant are awarded joint legal custody of the minor child, Justin. The parties shall exert their best efforts to work cooperatively in future plans consistent with the best interests of the child and in resolving amicably such disputes as may arise from time to time.
(2) Residence: The primary resident of the minor child Justin shall be with the Plaintiff.
(3) Visitation/Access: The Defendant shall have reasonable rights of visitation with access to said minor child Justin as follows:
a. The Defendant shall have Justin every other weekend, Friday night 6:00 p. m. to Sunday 6:00 p. m. The Defendant shall also have Justin one night during the week. The Defendant shall inform the Plaintiff one week in advance which weekday night he desires to be with Justin and shall inform the Plaintiff seventy-two (72) hours in advance of the visitation if he is unable to visit with Justin.
b. The Defendant shall have Justin for four weeks in the summer, the exact dates to be agreed upon by the parties. The Defendant is also granted one week's visitation during one of the winter/spring school vacations, the details for which to be agreed upon by the parties sixty (60) days CT Page 1273 prior to visitation taking place.
c. During any visitation the Defendant shall permit and encourage reasonable telephonic communication between Justin and Plaintiff. Further, the parties agree, due to Justin's special needs that the following conditions shall be observed:
(1) Defendant shall not consume alcoholic beverages during visitation or within 8 hours prior thereto.
(2) Defendant shall maintain a physical presence during such time as Justin is in a swimming pool or is otherwise in a position of potential risk.
(4) Affections: Each of the parties shall exert every effort to maintain free access and unhampered contact including telephonic contact between the child and the other parent and to foster a feeling of affection between the child and the other parent. Neither parent shall take any action which would estrange the child from the other; or which would impair the natural development of the child's love and respect for each of the parents.
B. Child Support: (a) The Defendant shall pay the Plaintiff the sum of One Thousand ($1,000.00) Dollars per week support for the minor child, Justin.
C. Health Insurance:
(1) The defendant shall maintain medical and dental insurance for the minor child, Justin, and shall also be responsible for seventy-five (75%) percent of all unreimbursed medical, dental, optical, orthodontic, psychological, psychiatric, prescription expenses, additional respite, aides, R.N., and other reasonable and necessary expenses including but not limited to equipment, wheelchairs, lift van for the child, to the extent that they are not covered by such prepaid medical insurance or Title XIX.
(2) The provisions of Sec. 46b-84c C.G.S. shall apply herein.
D. Life Insurance: The defendant shall maintain a Five Hundred Thousand ($500,000.00) Dollar life insurance policy CT Page 1274 for the minor child, Justin, with the defendant as Trustee of said insurance.
E. Minority and Post-Majority Support Agreement.
The parties have entered into an agreement dated December 21, 1993 concerning the care and support of Justin both before and after he has reached his majority. A copy of their agreement is attached hereto and made a part of this Memorandum of Decision.
VIII. ALIMONY
Having considered all of the evidence as it relates to Sec. 46b-82 C.G.S., and having noted in particular such predominating factors as the length of the marriage, the comparative incomes of the parties, the causes for the dissolution, and the awards previously made pursuant to Sec. 46b-81c C.G.S., this court orders that defendant pay alimony to plaintiff in the following manner:
 A. By the payment of the sum of $3,000 per week for ten years from the date hereof;
 B. By the payment of the sum of $2,000 per week for an additional year;
 C. By the payment of the sum of $1,500 per week for an additional year thereafter;
 D. By the payment of the sum of $1,000 per week for an additional year thereafter; and
 E. By the payment of the final sum of $500 per week for the final year.
It is the intention of this court that all payments of alimony by defendant to plaintiff shall terminate after fourteen years from date hereof.
This order shall be non-modifiable as to term only, but shall sooner terminate upon the remarriage of the plaintiff, her cohabitation with an unrelated male within the meaning of the statute, or upon the death of either party. CT Page 1275
In making this order, this court has observed that defendant presently earns a net of $9,845 per week and that plaintiff's current expenses are $1,879 per week which, on the evidence, are hardly excessive. It has noted further that the parties resided together for fourteen years, that plaintiff is presently a licensed registered nurse and that defendant has provided for his family during the separation. Lastly, concerning the care of Justin, it is aware that defendant does not deem it presently feasible that plaintiff become employed and that plaintiff has expressed a desire that Justin complete college in ten years and thereafter reside in an independent living facility with his peers. This court through its orders has attempted to provide for plaintiff during Justin's preindependent period and thereafter to allow plaintiff time at age fifty-six to sharpen her existing skills and to immerse herself gently into the sea of employment, with payments of alimony to terminate at a time when other possible retirement benefits are on the near horizon.
This court has also considered the lifestyle plaintiff might have anticipated but for defendant's departure from the family home. "Ordinarily, the amount of this support should be sufficient to provide her with the kind of living which she might have enjoyed but for the breach of the marriage contract by the defendant." Shrager v. Shrager, 144 Conn. 483, 487
(1957).
IX. OTHER ORDERS
A. Life Insurance
Defendant shall maintain a life insurance policy in the minimum amount of $1,000,000 with plaintiff as irrevocable beneficiary thereof during such time as defendant shall be required to pay alimony under the terms of this judgment.
B. Health Insurance
Defendant shall maintain medical and dental insurance for the plaintiff for such time as she is eligible pursuant to COBRA, but at her own cost and expense.
C. Counsel Fees
In view of the preceding orders of this court, no CT Page 1276 award of counsel fees is made to either party.
D. Income Tax Exemption
The defendant shall be entitled to claim the minor child Justin as an exemption for state and federal income tax purposes each year.
E. Income Tax Return
The parties shall share equally any refunds from any federal or state tax returns filed by each of them for the tax year 1993.
F. Liabilities
Each of the parties shall be solely responsible for all liabilities listed on his or her financial affidavit and shall hold the other party harmless in that regard.
John D. Brenhan State Judge Referee