[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties intermarried at Bronxville, New York, on June 10, 1972. The defendant has satisfied the Connecticut residency requirement, and all statutory stays have expired. Therefore, the court has jurisdiction over this matter. There are two children, issue of this marriage. Both have reached majority. They are Ashley, age 26 and Lacey, age 24. The evidence CT Page 5117 clearly indicates that the marriage has irretrievably broken down. Judgment may enter dissolving the marriage on that ground.
The plaintiff is 52 years old. She reports no health problems other than high blood pressure. She graduated from Briar Cliff College in 1971 with a Bachelor of Arts degree in child psychology. Upon graduation, she worked full time for less than one year as a receptionist. Since her marriage, she has held no full time job and has worked part time for a total of six months, and the last time she worked was between the period of September, 1998 and February, 1999. However, the plaintiff fulfilled the role of a mother and homemaker during this relationship.
The defendant is 56 years old. No health problems were indicated by him. He graduated from Parsons College in 1968 with a Bachelor of Arts degree in History. Upon graduation, he began employment with a company called Donnelley Marketing. He started as an account coordinator and when he left that employment in 1990 he had risen to the position of vice-president of marketing. The defendant's entire career has been spent in the sales and marketing field in the consumer promotion area.
The parties separated in March, 1995. The plaintiff claims the defendant exhibited violent and abusive behavior towards her over the years. Yet, at trial she stated she still loves him. The defendant admits arguments occurred during the marriage but denies any incidents of abuse. The court declines to assess fault and finds each party has some responsibility for the failure of this relationship.
The parties have been engaged in litigation since the plaintiff in 1995 brought a divorce action in New York. After five years she withdrew that action and commenced the present suit that has been pending for the last two years.
At the time of separation, the parties' assets consisted of a residence, two tax shelters which had cost $125,000 and a small 401(K) plan with a minimal value. They had sizeable debts at that time.
In 1996, by agreement the parties, each of whom was represented by counsel, sold the marital residence, and they realized the sum of $850,000 from that transaction. They disbursed that entire sum as follows:
Net proceeds $ 850,000
 Payment of all outstanding debts $ 430,000
Balance $ 420,000 CT Page 5118
 Funds used for the personal needs of the parties:
 A review of the evidence, including Exhibits #71 and #73 indicates the approximate division:
 To the plaintiff $ 275,000 To the defendant $ 145,000 $ 420,000
Balance $ 0.00
The tax shelter and 401(K) were retained by the defendant. In essence, the parties equally divided their assets after payment of their outstanding debts.
Since 1995, two significant event occurred in the lives of the parties.
In 1999, the plaintiff's mother passed away. The plaintiff inherited her mother's home, and the plaintiff lives there at the present time. The property at the time of the plaintiff's mother's death was encumbered by two mortgages totaling approximately $528,000.
The plaintiff stated, and the court finds, that the present fair market value of her residence to be $1,200,000. It is also currently encumbered by two mortgages as a result of loans made by the plaintiff in 2000 and 2001 that total approximately $900,000.
Since 1995, the defendant worked at several jobs for short periods of time with different employers. Good fortune shone upon him while working for one employer, Save Smart (which later became Info Space) for whom he worked for a total of one and one-half years. (1996-1998). He received stock options during that period which he exercised.
In 2000, the defendant sold some of the stock he had purchased for a substantial gain. He netted from the sale approximately $720,000. As a result, he was able to buy an expensive home, in which he currently resides, and acquire the assets listed on his current financial affidavit. The defendant owns all of his current assets because of the windfall he received from his post separation employment.
The parties, therefore, each acquired significant assets since their separation seven years ago. The issue presented is what is an appropriate distribution of those assets.
It is clear that in this jurisdiction the assets of the parties are valued as of the date of dissolution. Sunbury v. Sunbury, 216 Conn. 673
CT Page 5119 (1990). However, the court has discretion to allow or to disallow one spouse to share in the assets acquired by the other after separation.Papageorge v. Papageorge, 12 Conn. App. 596, 600 (1987). A court is not prohibited from awarding one spouse a share in the other's assets no matter when acquired, even if the acquisition occurs after a separation.Roach v. Roach, 20 Conn. App. 500 (1990). The criteria in General Statutes, Section 46b-81 must be considered and applied to the facts of each case.
It is significant to note that the defendant earned his stock options he later exercised as a result of new employment, obtained three years post separation, which had no connections with any prior employers of the defendant. He was rewarded for his work efforts post 1995. He also enjoyed those benefits five years after separation. It is also noted that, at the time of separation, the two children of the parties were ages 19 and 17. The plaintiff was relieved of most of the duties required of a homemaker. In sum, it is difficult to assign any credit to the plaintiff for contributing to the defendant's acquisition of the assets he has obtained in the seven years since the separation of the parties.
The assets of the parties as shown on their financial affidavits indicate the following:
(1) The plaintiff's affidavit indicates her ownership in her current residence, which she inherited in 1999. She states the fair market value to be $1,050,000 and the encumbrances as $910,000. The equity, therefore, is listed as $140,000.
The court, as previously stated, finds the fair market value to be $1,200,000. Therefore, the current equity in the property is $290,000.
(2) The defendant's affidavit includes:
A. Current residence
Fair market value $ 1,200,000
Less: Mortgage $ 746,000
Total equity $ 454,000
1/2 thereof $ 227,000
At trial, the defendant testified and the court finds the current fair market value to be $1,300,000. Therefore, the total equity in the property is $554,000. The court further finds that the defendant CT Page 5120 transferred a one-half interest therein to his current fiancee without consideration and as a gift. Therefore, for equitable distribution considerations, the court assigns to the defendant the entire value of the equity, which is $554,000.
B. Securities valued at approximately $ 87,000;
 C. Future interests (401(K) plans) valued at approximately $ 54,000;
 D. Checking accounts $ 6,600.
The court finds for equitable distribution purposes that the defendant's current total assets are $701,600.
The total assets for distribution considered by the court at this time include the assets of the parties described above plus the value of the assets they divided between themselves at the time of separation. The court also has taken into consideration the debts previously paid by the parties, as well as the current liabilities stated on their affidavits.
The trial took seven days and produced close to one hundred exhibits. The court has carefully considered the evidence and applied the criteria set forth in General Statutes, Sections 46b-81 and 46b-82 in reaching the decisions reflected in the orders that follow.
The plaintiff represented herself throughout the trial. Although she expressed a desire to have counsel, she discharged her prior counsel on the eve of trial. She made that decision after being advised by a judge of this court that the trial would proceed as scheduled, and no further continuances would be granted. The case had been pending for two years in Connecticut and prior continuances had been obtained.
The court is satisfied that from the evidence presented it is capable of making informed and equitable decisions in this case. Both parties are articulate and have furnished the court a history of their marital relationship in great detail. The plaintiff has presented detailed claims for relief which express her position as to her entitlements from this marriage. The defendant has also done so.
The following orders may enter:
(1) Commencing June 1, 2002, and on the first day of every month thereafter, in advance, the defendant shall pay to the plaintiff as periodic alimony the sum of three thousand five hundred dollars ($3,500) per month. The payments shall continue until the death of either party, CT Page 5121 the plaintiff's remarriage or cohabitation pursuant to Connecticut General Statutes, Section 46b-86 (b), whichever event first occurs.
For the month of May, 2002, the defendant shall pay the plaintiff as periodic alimony the pendente lite order of five thousand dollars ($5,000).
(2) The defendant shall assist the plaintiff with obtaining her COBRA benefits from the defendant's insurance provider. The defendant shall pay as additional periodic alimony one-half (%) of the plaintiff's monthly costs of her medical insurance premiums for the period she avails herself of such benefits.
(3) The defendant shall name the plaintiff as beneficiary of life insurance on the defendant's life having a benefit in the event of his death of One Hundred Thousand Dollars ($100,000), free and clear of any encumbrances. The plaintiff shall be entitled to proof of coverage on an annual basis. This order is intended to be an assignment of property and non-modifiable.
(4) The defendant shall name the plaintiff as a beneficiary of additional life insurance on the defendant's life having a benefit in the event of his death of one hundred fifty thousand dollars ($150,000), free and clear of any encumbrances. The plaintiff shall be entitled to proof of coverage on an annual basis. This order is intended for security for the payment of alimony and shall be in effect only as long as the defendant is obligated to pay periodic alimony and may be modified upon a showing of a substantial change in circumstances.
(5) Each party shall retain those assets listed on her and his financial affidavit.
Significant factors that entered into reaching this conclusion are the following:
A. In 1995, upon separation and by agreement, the parties equally divided their only asset and paid their existing debts. The current assets available were all acquired in the years following 1995;
B. The plaintiff owns the property inherited from her mother. The court has found the current equity to be $290,000. ($1,200,000 — $910,000).
The inherited property at the time of the plaintiff's mother death had encumbrances of $528,000. The defendant, in the years 2000 and 2001, increased the mortgages to $910,000, and increase of $382,000. CT Page 5122
The plaintiff had the benefit of these additional funds for her own use. The plaintiff's only explanation for what the money was spent was for living expenses. Assuming this explanation is credible, the evidence revealed that for the years following separation of the parties, from 1996 through 2001, the plaintiff had the following sources of money available:
 (1) Alimony approximately $ 240,000 (2) Increase in mortgage loans $ 382,000 (3) Proceeds from sale of marital residence $ 238,000
Total $ 860,000
 In addition she incurred debts that are currently outstanding $ 325,000 
Total payments and debts since 1995 $1,185,000
This mathematical exercise indicates the plaintiff's average living expenses for the period post separation were approximately $200,000 per year. During that period the plaintiff essentially lived alone as her two children were away at school.
The plaintiff followed this life style voluntarily, knowing at the time of separation that there were no foreseeable assets to be divided in the future. The plaintiff's refusal to face reality resulted in her depletion of her assets in the amount of $382,000 (the increase in mortgages) and in her accumulating her current debts.
Although the plaintiff's assets are currently found to be $290,000, she has had the benefit of substantial additional funds ($382,000) from her post separation assets.
C. The defendant's current assets of approximately $700,000 have been acquired through his own efforts since the separation of the parties.
Coincidentally, each party's fortunes allowed them to have acquired the benefit of approximately similar amounts of assets in the years following their parting.
(6) At the time of separation, the parties paid their outstanding debts and were debt free. Since then, the defendant has supplied the plaintiff with financial support, both voluntary and under court orders.
Each party shall be solely responsible for the payment of the CT Page 5123 liabilities set forth on his or her financial affidavit and for any other debts he or she may have individually incurred since separation that have been omitted from the financial affidavits.
(7) The plaintiff shall within thirty days of the date of this memorandum remove the lis pendens filed against the defendant's residence in Connecticut.
(8) The plaintiff claims she has outstanding medical bills. She has been included in the medical insurance policy maintained by the defendant. The plaintiff may submit all outstanding bills directly to the defendant's insurance provider for payment. All payments received by the defendant from his insurance carrier shall be promptly turned over to the plaintiff. The defendant shall cooperate, if required by his carrier, in processing the plaintiff's claims. In any event, in reference to the plaintiff's outstanding medical bills, the extent of the defendant's liability shall be limited to turning over to the plaintiff all payments made by his insurance provider for any payments made directly to the defendant.
(9) The plaintiff has maintained that the defendant owes her an arrearage due on the support order issued by a New York court in the prior dissolution action commenced by the plaintiff. The defendant disputed this claim and introduced evidence on this issue. The court advised the parties that the plaintiff would have to pursue this matter in the appropriate New York court.
(10) The defendant, in his claims for relief has requested the plaintiff return to him, several items of personal property. (Claim #8, items a through II). Mos of the items were personal items that the defendant brought to the marriage or were gifts from his family.
The plaintiff shall return to the defendant all items requested except the following:
a. Item n. (Miscellaneous books);
b. Item o (miscellaneous cookbooks);
c. Item v. (Christmas items);
d. Item hh. (Three shotguns).
(11) The plaintiff's maiden name of Daley is ordered restored.
Judgment may enter accordingly. CT Page 5124
NOVACK, J.T.R.