[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties were married on July 24, 1983 at Woodbury, Connecticut, and have resided in this State continuously ever since. They resided together for approximately two years prior to the marriage. This marriage was the second for the plaintiff husband, who is 53 years of age, and the third for the defendant wife, who is 47 years of age.
There are no minor children issue of the marriage or of their prior relationship. Each party has children from prior marriages. Neither party has received aid from the State of Connecticut.
The primary reason for the breakdown of the marriage is the infidelity of the defendant. Testimony of three partners to the same indicated fairly recurrent relations with the first from 1980 to 1988, with the second (Plaintiff's then business partner) from 1991 to 1993, and indiscretions with the third at times thereafter. Defendant admits the infidelity but disputes the frequence and date of commencement of the same. She asserts that relations with the first of said partners commenced in 1986 after she had instituted a dissolution proceeding against the Plaintiff. That proceeding was withdrawn when the parties reconciled in 1987.
Plaintiff's complaint in this action is dated July 7, 1993. In December 1993, the Defendant was diagnosed as having cancer. Her treating physician, Dr. Alfred Cretella, a medical oncology specialist, testified that her cancer had originated in one lung and had spread to the lymph nodes in her neck. When first diagnosed in December, 1993, her cancer was in an advanced state and inoperable. Accordingly, she was subjected to maximal treatment, including intensive chemotherapy and radiation therapy which have now ceased.
Defendant's disease is now in complete remission. No evidence thereof is apparent by means of X-ray, cat scan or physical touch. Nevertheless, Dr. Cretella testified that as a general rule in such cases, there is a 95% probability of recurrence. Such recurrence generally occurs within five years, and inmost cases within one or two years. However, because she responded so well to therapy, it is possible that she may be within the 5% who experience complete cure. Apparently, the next year or two will be crucial. CT Page 9718
Defendant's education consists of a GED high school equivalency. Prior to and during the early years she appeared to have a good work record. From 1978 to 1988 she was employed in the shipping and receiving department of Diventco, Inc. Thereafter she worked in Plaintiff's business operations.
Defendant is not now employed. According to Dr. Cretella, she is physically able to seek and secure full time employment, but, because he doubts that she can presently handle a position involving any degree of stress, he believes that she is emotionally unable to do so.
Plaintiff appears to be an astute businessman. He has been in the used auto sales and auto repair business. In 1990 he sold such a corporate business that he had acquired in 1981 and with a partner established a similar but unincorporated business known as ATI, to which he transferred the used car portion of the previous business. He testified that the wholesale value of the used cars then so transferred was $75,000. Defendant became the bookkeeper at ATI. Plaintiff was in charge of the used car part of ATI and his partner was in charge of auto service and repairs.
Plaintiff, however, also conducted a personal used car business separate from ATI. According to his partner, this was a cause of the dissension which resulted in Plaintiff purchasing his partner's interest for $27,500 in October 1993. Plaintiff is now the 100% owner of ATI.
Plaintiff now conducts three businesses: ATI, limited to auto service and repair, which he claims is virtually defunct; his used car business, which he claims is not turning a profit, and a startup and as yet unprofitable photographic business named Strider Co. The parties concede, and the Court so finds, that Defendant has no interest in these businesses and that they are not part of the marital estate.
Nevertheless, for reasons never adequately explained, at least for tax purposes, Plaintiff reversed his and Defendant's roles in ATI. She was held out to be the partner, and he the employee. See Ptf. Ex. 2a-c, 1991-1993 federal tax returns. She would ostensibly be paid as a partner by check equal in amount to the other then 50% partner, and Plaintiff would be paid as an employee by check in the lesser amount attributable to Defendant's actual services. The checks would then be exchanged, Plaintiff retaining the check issued to her and the funds evidenced thereby. CT Page 9719
Apart from the obvious, this charade of holding out Defendant as the partner apparently has had other consequences. A small claims judgment in the amount with costs of $830.00 entered against the Defendant and the then former ATI partner upon a claim against ATI. Dft. Ex. F. Plaintiff concedes that he, not Defendant, is responsible for payment.
Defendant brought no appreciable financial assets or other property to the marriage. The marital estate, basically consisting of their present residence at Beardsley Road, New Milford, Connecticut (hereinafter sometimes referred to as the "marital residence") primarily if not exclusively resulted from funds, including financing produced by Plaintiff.
The real estate comprising the marital residence is more particularly described in the various deeds and mortgages, comprising Ptf. Exs. 3, 6, 7 and 8, reference to which is had. The land was acquired in the parties' joint names shortly before their marriage. Ptf. Ex. 3. In 1987, apparently after construction of the house and improvements thereon were completed, but prior to closing the first permanent mortgage, title was transferred to Plaintiff alone.
Title remained in the Plaintiff alone until June 1993, when faced with a pending lawsuit against him, he transferred the entire title to the Defendant. He testified that the transfer deed, which was not in evidence, showed consideration of $70,000, but in fact no consideration was involved. Title is presently in the joint names of Plaintiff and Defendant with rights of survivorship pursuant to Court order (Dranginis, J.) dated March 4, 1994 granting Plaintiff's motion for the same dated January 4, 1994.
The parties continued to coexist in the marital residence after the institution of this action. The Defendant was removed from the residence for period of several months, January to March 1994, pursuant to protective orders issued in G.A. 18 in connection with criminal charges brought against her resulting from altercations with Plaintiff. These charges were subsequently dropped. She was again removed from the residence by order of this Court (R. Walsh, J.) dated June 21, 1994, pursuant to the parties' stipulation therefor. Since that time she has resided with a relative. Plaintiff has remained in the marital residence. CT Page 9720
No testimony of any expert or professional was offered by either party on any issue affecting valuation of the marital residence, Plaintiff's business or anything else. The only evidence regarding current valuation is that set forth in the parties' financial affidavits and the testimony of the Plaintiff. The former partner in ATI did give some testimony regarding that business during his period of co-ownership.
Defendant's financial affidavit dated September 16, 1994 ("Defendant's trial affidavit") shows no appreciable assets other than a $269,000 gross valuation exclusive of debt for the marital residence. Although her affidavit lists liabilities for room and board, there was no evidence that she has actually been charged the same.
Plaintiff's financial affidavit dated September 16, 1994 ("Plaintiff's trial affidavit"), both contains a number of discrepancies, inaccuracies and omissions, and is in material part inconsistent with prior financial affidavits filed by him in this case, including as recently as March 3, 1994 and June 21, 1994. Although early in the trial the Court suggested that Plaintiff file a corrected trial affidavit, he did not do so. Cf. Billington v. Billington, 220 Conn. 212,219-20 (1991).
For example:
1. The $23,000 shown on Schedule A as owing to his former ATI business partner is actually part of the $38,000 of ATI liabilities claimed in Section 4H. This constitutes a double deduction for the same $23,000 debt.
2. That $23,000 debt is apparently the balance owing to the former ATI partner on the buyout of his 50% interest for $27,500. This computes to a $55,000 value for a 100% interest net of liabilities in October 1993. Plaintiff testified that he would now sell ATI for its liabilities. He could give no credible reason for this ostensible difference in values.
3. Plaintiff's direct testimony together with extrapolation from a 1991 ATI equipment list showing values (Dft. Ex. G) indicate a present value of ATI equipment of at least $18,000 to $21,000. No reference to this asset value is shown.
4. Values of various assets, particularly the marital CT Page 9721 residence, the boat and antiques and furnishings, as well as gross earnings, are significantly less than the values therefor set forth in the March 3, 1994 and June 21, 1994 affidavits.
5. There was no evidence that the long standing $25,000 obligation to his mother Alice Mann and the $10,000 obligation to, his elderly friend Jean Foster constitute legal obligations. The Court also notes that these obligations are not listed as liabilities in the personal financial statement dated December 6, 1991 (Dft. Ex. E) given by him to a Georgia bank in connection with a loan application. (Plaintiff signed Defendant's name to that statement.)
As Plaintiff's counsel pointed out at trial, there is no need for the Court precisely to value the business assets since Defendant concedes that these are not part of the marital estate and that she makes no claim to the same. There is also no need for precise valuation of the antiques and furnishings, since at trial the parties orally stipulated that they will amicably allocate these items between them.
It is necessary for the court to value the marital residence. As noted, neither party offered any expert or independent testimony as to value. The sole evidence of value presented to the Court is derived from Plaintiff's testimony and the opinion of the parties as set forth in their various financial affidavits. The owner of real property is competent to testify as to its market value, the weight to be accorded to that testimony resting with the trier of fact. Watson v. Watson, 20 Conn. App. 551, 560
(1990).
In her trial affidavit Defendant values the marital residence at $269,000, but states no amount for mortgages or equity. In his December 6, 1991 personal financial statement, Plaintiff sets forth a market value of $425,000 and an assessed value of $365,000. In his March 3, 1994 and June 21, 1994 financial affidavits, he opines to a value of $269,000, less $188,000 in mortgages, leaving an equity of $81,000. In his trial affidavit, he reduces value to $221,000, less $186,000 in mortgages, leaving an equity of $35,000. No reason was given for this $48,000 reduction in value in less than a three month period.
The Court adopts Defendant's $269,000 valuation. This figure is supported by Plaintiff's valuations, including as recently as in his June 21, 1994 financial affidavit. The only evidence CT Page 9722 presented to the Court by either party as to the present unpaid principal balance of the mortgages is the $186,000 amount contained in Plaintiff's trial affidavit. Since both mortgages (Ptf. Exs. 6-8) are of some duration and are apparently current, the Court will round off the present equity to $75,000.
The Court has carefully considered the criteria regarding disposition of the marital assets set forth in General Statutes § 46b-81, including but not limited to those pertaining to the causes for dissolution and the contributions of each respecting the marital residence. The Defendant did make non-financial contribution to the construction, decoration and maintenance. Title to the underlying land was originally taken in their joint names. In June 1993 Plaintiff saw fit to convey full title to the Defendant. Title is now in their joint names at his request.
It is fair and equitable that full title be in Plaintiff, and that he pay to the Defendant $25,000 for the conveyance to him of her interest. In accordance with the parties' stipulation and Court order (R. Walsh, J.) dated June 21, 1994, the sum of $2,000 heretofore paid by Plaintiff to Defendant shall be credited against said $25,000, leaving a balance of $23,000.
The Court has carefully considered the criteria regarding awarding of alimony set forth in General Statutes § 46b-82, including but not limited to those pertaining to length of marriage, cause for dissolution and health. Defendant possesses vocational skills, is physically able to work full-time, and is presently in complete remission. The next several years will be crucial.
Although an award of no alimony could be justified, under the circumstances here presented, an award of time limited alimony to assist the Defendant during this period is in order. Roach v.Roach, 20 Conn. App. 500 (1990). Plaintiff concurs in his Proposed Orders filed herein.
The Court, after reviewing the evidence in conjunction with the pertinent statutory criteria, and evaluating the credibility of the parties, makes the following findings and orders:
1. The Court has jurisdiction.
2. The marriage has broken down irretrievably. CT Page 9723
3. The marriage is dissolved.
4. With respect to the real property comprising the marital residence:
 a. The joint tenancy is hereby severed in accordance with General Statutes § 47-14g.
 b. Plaintiff shall be responsible and shall pay when due all expenses for mortgages, taxes, insurance, upkeep and maintenance, and shall indemnify and save harmless the Defendant from any claims, cost, expense or liability respecting the same.
 c. Defendant shall convey her interest therein to Plaintiff, and shall forthwith execute the appropriate deed of conveyance. Said deed shall be delivered to and held in escrow by Defendant's counsel of record in this action, subject to the provisions of this order.
 d. Plaintiff shall pay Defendant therefor the sum of $25,000 against which is credited the sum of $2,000 heretofore paid, leaving a balance of $23,000.
 e. On or before 30 days next after the date of this order, Plaintiff shall deliver to Defendant in care of her said attorney either
(i) Said sum of $23,000; or
 (ii) The sum of $5,000 together with his note and mortgage in the principal amount of $18,000, subject only to the present first and second mortgages, and in form and substance acceptable to Defendant. Absent agreement of the parties, said note and mortgage shall bear interest from date on unpaid balances at the statutory rate for money judgments, shall provide for monthly payments of principal and interest commencing one month from date of $1,500 until paid, and shall not be subject to subordination. CT Page 9724
 e. Costs of recording the deed and mortgage and any conveyance taxes shall be paid by Plaintiff.
5. The Defendant is awarded periodic alimony in the amount of $200 per week for a period of five years. Alimony shall terminate upon the Defendant's death, remarriage or cohabitation with any person, and shall be nonmodifiable except only to the extent that the Defendant shall be gainfully employed.
6. Medical insurance equivalent to that now in effect or otherwise within the purview of COBRA shall be maintained for the Defendant at Plaintiff's expense for 36 months or until the equivalent is available from Defendant's employment, whichever occurs sooner. Plaintiff shall pay all expenses within the deductible limits of the, policies provided pursuant to his obligation hereunder.
7. Plaintiff shall forthwith pay the small claims judgment against Defendant evidenced by Defendant Exhibit F and indemnify and save harmless Defendant from any cost or expense in connection with the same.
8. Defendant shall have no claim to or interest in any of the Plaintiff's businesses or business assets, including ATI, his used car business and Strider Co. Plaintiff shall indemnify and save harmless Defendant from any and all claim, cost, expense and liability respecting the same or respecting any joint federal or state income tax returns for years 1993 or prior thereto.
9. The parties shall divide their joint personal property at the marital residence as they may agree.
10. In light of the award of property distribution and periodic alimony, no contribution toward attorneys fees shall be made by either party to the other.
11. Except as provided for herein, each party shall hold the assets shown on said party's September 16, 1994 financial statement free and clear of any claim of the other, and shall be responsible for such party's own liabilities shown thereon.
12. As used, herein, the obligation to indemnify and save harmless shall include the obligation to defend against any subject claim and to pay all costs including attorney's fees in connection therewith. CT Page 9725
Judgment shall enter in accordance herewith.
DAVID L. FINEBERG, J.