PAUL ROACH *v.* MARY F. ROACH
(7320)

DUPONT, C. J., SPALLONE and O'CONNELL, Js.

Argued October 3, 1989—decision released January 16, 1990

*Douglas S. Skalka,* with whom were *Debra A. Ludwig* and, on the brief, *Karen L. Williams,* for the appellant (defendant).

*Sperry A. DeCew,* for the appellee (plaintiff).

*Patty Jenkins Pittman* filed a brief for Connecticut Women's Education and Legal Fund, Inc., as amicus curiae.

DUPONT, C. J. The defendant wife appeals from the judgment rendered in this dissolution action, challenging the financial awards of the trial court. The trial court, *Hon. William L. Tierney, Jr.,* state trial referee, dissolved the parties' marriage and ordered the plaintiff husband to convey his one-half interest in the marital residence to the defendant and to pay periodic alimony to the defendant in the amount of $300 per week for a period of three years. The primary issues on appeal are whether the trial court abused its discretion in awarding the defendant time limited alimony, and whether the defendant, in addition to the award

of periodic alimony, should have been awarded support under General Statutes § 46b-85 because of her alleged mental illness.

We recognize that the court was faced with an extremely difficult case where there was no ideal financial solution and where equitable considerations could be applied to both parties. The parties were married in 1953. Six children were born of the marriage, all of whom have reached the age of majority. In 1970, the plaintiff moved out of the family residence, leaving the defendant to care for the parties' children who, at that time, ranged in age from five to fifteen years. The defendant continues to reside in that house, located in New York state, with the parties' schizophrenic son. From 1970 until 1986, when the youngest child attained majority, the plaintiff paid child support ordered by the state of New York in the form of mortgage, insurance and tax payments on the house. The plaintiff testified that he had paid other expenses for the children, but did not claim to have paid for their food or other household costs.

The defendant testified that since the separation she has worked at occasional jobs, borrowed money, accepted help from relatives, taken in boarders, and received welfare benefits. She is sixty years old, currently receives $403 per month in social security disability income and has not worked in ten years. She has no other income. The house in which the defendant had a one-half interest as of the date of the dissolution is subject to a tax lien and a $10,000 mortgage to Westchester County, New York, for welfare support furnished to her in the past.

The plaintiff is employed as a senior engineer and earns approximately $50,000 a year. He currently resides in and owns a cooperative apartment in Greenwich that is valued at $220,000 on his financial affida-

vit.[1] In addition to the apartment and a one-half interest in the marital residence, the plaintiff's assets include a $140,000 profit sharing plan, individual retirement accounts worth approximately $16,000, two vehicles, $4500 in savings bonds, and an interest of approximately $15,000 in the estate of his deceased aunt.

Neither party is in good health. The plaintiff is fifty-eight years old and has had open heart surgery twice. The defendant has been receiving psychiatric treatment intermittently since 1959. She began seeing her current psychiatrist, Selwyn Juter, as a primary patient in 1986[2] and has been hospitalized three times for mental problems since then. Juter testified that the defendant suffers from a chronic personality disorder that is exacerbated by stress, produces severely dysfunctional behavior, and requires ongoing psychiatric treatment. In his opinion, the defendant is unemployable due to her mental illness. He also testified that he does not expect her mental condition to improve in the future.

The plaintiff filed the present dissolution action on January 10, 1986.[3] In October, 1986, the court appointed a guardian ad litem for the defendant pursuant to an agreement by both parties. After unsuccessful attempts by the plaintiff to depose the defendant, the court granted the plaintiff's motion for an immediate trial, and set a trial date of June 7, 1988. Because the defendant was hospitalized on that day and had admitted the allegations contained in the plaintiff's complaint, the court bifurcated the matter and granted the plaintiff

---

[1] The financial affidavit, dated April 28, 1988, indicates that the property is encumbered by a $43,000 mortgage, leaving equity of $177,000. In its memorandum of decision, the trial court valued the property at $140,000 without explaining the $80,000 discrepancy.

[2] Juter first met the defendant in 1972, when he was treating the parties' son.

[3] The plaintiff had sought and was denied a divorce in a contested action in New York in 1976.

an uncontested dissolution of marriage. Trial on the financial issues commenced later that month, and, after several days of testimony by both parties and by the defendant's psychiatrist, the court rendered its decision.

Both parties and the guardian ad litem for the defendant filed motions for articulation of the court's memorandum of decision. The trial court filed an amended memorandum pursuant to the defendant's amended motion for articulation.[4]

The court, in its articulation, stated that its financial awards were based upon its findings that the breakdown of the marriage was the defendant's fault, that the fee of $33,000 sought by the defendant for legal and guardian ad litem fees should not be imposed on a person in the plaintiff's financial position, and that in the eighteen years the parties were separated, the defendant had made no claim for alimony and had not disclosed her earnings. It also stated that the defendant had not contributed, after 1970, to the acquisition of the plaintiff's assets, and, therefore, had no interest in them.

The defendant first argues that the trial court abused its discretion in awarding her time limited periodic alimony. She claims that the court failed to consider the mandatory statutory criteria for alimony awards and that its decision conflicts with the well established purposes of time limited alimony. The plaintiff argues that the trial court properly considered and weighed the

---

[4] The defendant also filed a motion for a new trial based upon the alleged failure of the court to clarify the issues. The trial court, *Novack, J.*, properly denied the motion. The original memorandum and the court's articulation are grist for appellate review, not a reason for a new trial. Judge Tierney did not rule on the motions for articulation by either the plaintiff or the guardian ad litem, but there is no claim on appeal that this lack of articulation affects the appeal.

criteria of General Statutes § 46b-82 and that the award of time limited alimony was within its broad discretion.

General Statutes § 46b-82 provides that a trial court, in determining whether alimony shall be awarded, and the duration and amount of the award, shall consider "the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties . . . ." As long as the trial court considers all of these statutory criteria, it may exercise broad discretion in awarding alimony. *Carpenter* v. *Carpenter,* 188 Conn. 736, 740–41, 453 A.2d 1151 (1982); *O'Neill* v. *O'Neill,* 13 Conn. App. 300, 312–13, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988).

"Our standard of review in domestic relations cases is a very narrow one. We will not reverse a trial court's rulings with regard to . . . financial orders unless the court incorrectly applied the law or could not reasonably have concluded as it did." *O'Neill* v. *O'Neill,* supra, 302. While the trial court need not make an express finding on each of the mandatory statutory criteria; *Leo* v. *Leo,* 197 Conn. 1, 5, 495 A.2d 704 (1985); *Louney* v. *Louney,* 13 Conn. App. 270, 273, 535 A.2d 1318 (1988); the record must contain some indication as to the reasoning of the court in making an alimony award of limited duration. *Makarian* v. *Makarian,* 2 Conn. App. 14, 16, 475 A.2d 337 (1984).

The court specifically stated that it limited the periodic alimony award to three years in order to give the defendant time to sell the house for an optimum price. The court had not ordered the defendant to sell the house nor was there any testimony indicating that the defendant would sell the house. No rationale based upon the evidence was proffered by the court for the partic-

ular duration of the periodic alimony. Without such a rationale, the award cannot stand. See *O'Neill* v. *O'Neill,* supra, 314.

The court made no express finding as to the defendant's employability, but stated that the "[d]efendant worked for many years in a responsible position as a legal secretary and never attempted to seek alimony from [the] plaintiff until this action was started." In fact, the defendant testified that she had worked only intermittently since 1970, that she had received welfare benefits for a time, and that her parents had helped support her for a period after the separation. She also testified that she has not worked at all since 1979 or 1980. The defendant's psychiatrist testified that the defendant's mental illness rendered her unemployable. No evidence was offered to show that the defendant is currently employable.

The traditional purpose of alimony is to meet one's "continuing duty to support." *Blake* v. *Blake,* 211 Conn. 485, 498, 560 A.2d 396 (1989); *Rubin* v. *Rubin,* 204 Conn. 224, 228, 527 A.2d 1184 (1987); *Weiman* v. *Weiman,* 188 Conn. 232, 234, 449 A.2d 151 (1982). Recently, however, courts have begun to limit the duration of alimony awards in order to encourage the receiving spouse to become self-sufficient. "Underlying the concept of time limited alimony is the sound policy that such awards may provide an incentive for the spouse receiving support to use diligence in procuring training or skills necessary to attain self-sufficiency." *Makarian* v. *Makarian,* supra, 16; see also *O'Neill* v. *O'Neill,* supra, 313–14. Although time limited alimony awards are usually rehabilitative in purpose, there may be other valid reasons for awarding such alimony. No such valid reason exists here.

This is one of those instances in which the trial court abused its broad discretion by misapplying the law and

making crucial findings that were not reasonably supported by the facts. *McPhee* v. *McPhee*, 186 Conn. 167, 177, 440 A.2d 274 (1982); *Deteves* v. *Deteves*, 2 Conn. App. 590, 592–93, 481 A.2d 92 (1984). The defendant is a sixty year old woman with serious mental limitations who has not worked in ten years, living with an adult child incapacitated by mental illness. There was no evidence to support the conclusion of the court that three years was an appropriate period of time for the duration of alimony.[5]

Other findings of the court are also unsupported by the record or are the result of a misapplication of the law. From the defendant's "bitter and erratic" trial testimony, the court found that she was the cause of the breakdown of the marriage. While cause is an appropriate factor to be considered pursuant to General Statutes § 46b-82, the demeanor of a party while testifying, particularly a party for whom the court has appointed a guardian because of admitted mental infirmities, cannot be converted into the cause for the breakdown of the marriage. Furthermore, the defendant's failure to seek alimony in the past does not preclude her from seeking it incident to dissolution proceedings, although the court found that it did. Section 46b-82 has no such statutory criterion. See *Deteves* v. *Deteves*, supra. The denial or curtailment of alimony cannot rest upon the failure of a party to seek support during a period of separation.

The court also determined that the defendant could not share in the assets that the plaintiff had acquired

---

[5] Even if the court had awarded time limited alimony for rehabilitative purposes, the award would have to be set aside. There was no evidence that the defendant is currently employable or will become employable in the future. See *O'Neill* v. *O'Neill*, 13 Conn. App. 300, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988); *Deteves* v. *Deteves*, 2 Conn. App. 590, 481 A.2d 92 (1984). An award of time limited alimony cannot provide an incentive for the defendant to acquire training and job skills, since her unemployability is not the result of a lack of training or skills.

after the parties had separated. While the court has discretion to allow or to disallow one spouse to share in the assets acquired by the other after separation; *Papageorge* v. *Papageorge,* 12 Conn. App. 596, 600, 533 A.2d 229 (1987); a court is not prohibited from awarding one spouse a share in the other's assets no matter when acquired, even if the acquisition occurs after a separation. This is so for two reasons. First, the nonmonetary contributions of one spouse, such as the primary care of children and the upkeep of the family home, may have enabled the other spouse to acquire or to retain assets; *O'Neill* v. *O'Neill,* supra, 311; and such contribution can continue after the parties' separation. Second, assets are valued as of the date of dissolution, rather than as of the date of an earlier separation. *Zern* v. *Zern,* 15 Conn. App. 292, 296, 544 A.2d 244 (1988).

The court also determined that the defendant's legal fees and guardian ad litem fees should not be paid by the plaintiff. Whether such expenses should be paid is ordinarily within the court's discretion. See *Turgeon* v. *Turgeon,* 190 Conn. 269, 280–82, 460 A.2d 1260 (1983); *Stoner* v. *Stoner,* 163 Conn. 345, 355–56, 307 A.2d 146 (1972). In this case, since the financial awards must be retried, the issue of whether the defendant's fees should be paid must, as part of the financial whole, also be left for a redetermination. See *Sunbury* v. *Sunbury,* 210 Conn. 170, 553 A.2d 612 (1988).

The defendant next claims that the trial court erred in failing to award her support pursuant to General Statutes § 46b-85. Section 46b-85 provides in pertinent part: "At the time of granting dissolution of a marriage to which one party is mentally ill or at any time thereafter, on application of either party or of the guardian or conservator of the mentally ill spouse, or of any person, town or other municipality charged with the support of the mentally ill spouse, or the commissioner of

administrative services if the state is charged, the court may make such order requiring support of the mentally ill spouse, or security for support, as may be proper."

The defendant's mental health was a key issue at trial. While the court made no express findings on this issue, the memorandum of decision, articulation, and financial orders indicate that the court found that the defendant was not mentally ill and, therefore, did not order any supplemental support pursuant to § 46b-85.

In the fifth paragraph of its original memorandum of decision, the court stated that Juter expected the defendant's mental condition to improve after the divorce. In fact, although Juter testified that the termination of divorce proceedings would remove an immediate source of stress, he also unequivocally stated that he did not see a chance of the defendant's condition improving. The court also challenged the doctor's credibility and his diagnosis of the defendant. In its original memorandum, the court found that the doctor was unaware of many basic aspects of the defendant's ability to function on a day to day basis, such as her ability to drive a car, draw a will, and maintain her home. The transcript of Juter's testimony belies these findings. His testimony indicated that he was aware that the defendant is able to drive, but that she is sometimes prevented from driving by anxiety and panic. Juter also testified that the defendant is "able to exist by muddling through, but the quality and the dysfunctional nature [of her behavior] is extremely hazardous." He never testified about the defendant's ability to draw a will.

In its amended memorandum issued pursuant to the defendant's motion for articulation, the trial court conceded that it may have been mistaken about Juter's familiarity with the defendant's condition. It further conceded that, if the record clearly indicated that the

court had been mistaken, the original memorandum of decision should be changed to eliminate the incorrect portion. The record does indicate that the court's statements in the fifth paragraph were mistaken. The court stated in the amended memorandum that its reasons for not accepting Juter's testimony were set out in the fifth paragraph of the original memorandum. If the erroneous statements in that paragraph were eliminated, any grounds for challenging Juter's credibility or for rejecting his diagnosis of the defendant as mentally ill would also be eliminated, leaving no justification for the court's conclusion that the defendant was not mentally ill.

The defendant claims that she is eligible for support under § 46b-85 based on the evidence introduced tending to prove her mental illness. The plaintiff argues that the defendant is not eligible for such support because the trial court properly found that she was not mentally ill. A threshold issue not addressed by the parties, however, is whether a mentally ill party who lives without supervision is eligible for direct support under the statute. In other words, even if the court should have concluded that the defendant was mentally ill, we must determine whether the defendant could be entitled to both alimony under General Statutes § 46b-82 and direct support under General Statutes § 46b-85 as a mentally ill spouse.

Section 46b-85 is part of chapter 815j of the General Statutes, which governs the dissolution of marriages in Connecticut. Part III of that chapter, in which § 46b-85 is found, contains provisions for the division of property and for the support of children and spouses in dissolution actions. The alimony statute, § 46b-82, is also found in part III of chapter 815j. The defendant's claims for support under both §§ 46b-85 and 46b-82 inevitably raise the question of the relationship between the two statutes.

A key difference between the two sections is apparent from a plain reading. Section 46b-85 authorizes third parties charged with the support of a mentally ill party to a dissolution action to apply for support in that action from that party's spouse. Implied in the statute is the authorization for direct support payments to those third parties. In contrast, alimony may be sought only by a spouse under § 46b-82.

In addition, § 46b-85 provides that the court may order support "on application of either party." This provision is susceptible to two interpretations with two different consequences. It may be read as merely authorizing a mentally ill spouse to apply for support, with any resulting payments to be made to a third party responsible for or charged with the support of that spouse. Alternatively, the provision may be read as authorizing the mentally ill spouse both to apply for and to receive direct support payments. The latter interpretation would render a mentally ill spouse eligible for both alimony and a direct payment of support as a mentally ill spouse.

" 'Where the words of a statute fail to indicate clearly whether the provision applies in certain circumstances, it must be construed by this court . . . .' " *Zichichi* v. *Middlesex Memorial Hospital,* 204 Conn. 399, 405, 528 A.2d 805 (1987). Our objective in construing the language of an ambiguous statute is to give effect to the apparent intent of the legislature. *Norwich* v. *Silverberg,* 200 Conn. 367, 370–71, 511 A.2d 336 (1986). "In our pursuit of that objective, we look to the language of the statute itself, its legislative history, and previous judicial construction." Id.; see *Mahoney* v. *Lensink,* 17 Conn. App. 130, 134, 550 A.2d 1088 (1988), cert. granted, 210 Conn. 806, 554 A.2d 742–43 (1989).

Although an earlier version of § 46b-85 was first enacted in 1915 and was amended several times, no legislative history or prior judicial construction[6] sheds light on the intent of the legislature in enacting the statute. We are left with the language of the statute to guide our analysis. While the provisions of §§ 46b-82 and 46b-85 are not in direct conflict, it is at least unclear which statute should be used to provide support for a mentally ill spouse who is not cared for by another, either physically or by management of financial affairs.

In attempting to reconcile ambiguous or potentially duplicative statutes, we make every attempt to construe a statutory scheme as a whole. See *Powers* v. *Ulichny,* 185 Conn. 145, 149, 440 A.2d 885 (1981). Because § 46b-82 is designed exclusively for direct payment to a spouse, and because its language requires a court to consider a party's health, age, employability and needs in awarding alimony, the statute is well suited for the purpose of providing support for an independent but mentally ill spouse. The language of § 46b-85 indicates that its primary purpose is to allow third parties responsible for the support of a mentally ill person to seek contribution from that person's spouse, and to prevent a capable spouse from escaping financial responsibility if a mentally ill spouse is under the care of a third party. Our interpretation of § 46b-85 as authorizing support payments only to third parties responsible for the support of a mentally ill

---

[6] In *Luttrell* v. *Luttrell,* 184 Conn. 307, 439 A.2d 981 (1981), the only Connecticut case construing § 46b-85, the state had been receiving payments under the statute, since the divorce of the parties, for support of the defendant, who had been confined to a mental institution. The Supreme Court held that the Superior Court lacked jurisdiction under the statute to modify the original order rendered at the time of the divorce, or to require the plaintiff spouse to provide support for the defendant, who had since been cured of his illness and was no longer supported by the state. The holding hinged on the fact that the defendant was no longer mentally ill, and is not controlling in the present case.

spouse eliminates any confusion or duplication between the statutes and comports with the apparent intent of the legislature.

Since disturbing any portion of the financial awards in this case affects the entire financial scheme, including the failure to award attorney's fees and guardian ad litem fees, the case must be remanded for a rehearing. *Sunbury* v. *Sunbury,* supra.

There is error, the judgment is set aside as to alimony and the division of property and the case is remanded for a rehearing on the questions of alimony, the division of property, and the award of counsel and guardian ad litem fees.

In this opinion the other judges concurred.