JAMES R. RADCLIFFE *v.* IRIS RADCLIFFE
(AC 28019)

DiPentima, Robinson and Stoughton, Js.

Argued March 26—officially released July 8, 2008

*Norman A. Roberts II*, with whom, on the brief, was *Gaetano Ferro*, for the appellant (defendant).

*James Ryan Mulvey*, for the appellee (plaintiff).

*Opinion*

ROBINSON, J. In this marital dissolution action, the defendant, Iris Radcliffe, appeals from the judgment of the trial court with respect to the court's financial orders. Specifically, the defendant claims that the court improperly (1) found the value of the premarital property owned by the plaintiff, James R. Radcliffe, and (2) abused its discretion by ordering time limited alimony. We are not persuaded by the defendant's claims and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. The

parties were married on December 24, 1992. There is one minor child of the marriage.[1] At the time of the marriage, the plaintiff owned a parcel of real estate known as 1 Maplewood Avenue, located in Westport. The court found the equity in the Maplewood property at the time of the dissolution to be $395,000. The court further found that the plaintiff had always maintained this as a rental property[2] and that the defendant had not made any contributions to the Maplewood property.

During the marriage, the defendant went "from sophisticated, high level employment with . . . nationally and internationally renowned corporations . . . to being barely able to hold a job selling mortgages for more than a thirty day period." This decline stemmed, in part, from the rigors of the divorce litigation, as well as the "dysfunctional and deleterious nature of the plaintiff's and defendant's relationship over the past several years." The court opined, however, that "once this litigation and all its ramifications are behind the defendant, she will be better able to regain her focus and provide for herself a reasonable income, although not anywhere near the equivalence of the plaintiff."

The court dissolved the parties' marriage[3] and entered the following relevant financial orders. The plaintiff was instructed to pay weekly alimony in the amount of $250 for a period of two years. The court ordered that the term of alimony was nonmodifiable. The court divided the real and personal properties and ordered the plaintiff to pay the defendant $275,000. This appeal followed. Additional facts will be set forth where necessary.

---

[1] On March 8, 2006, the parties resolved all issues of custody and visitation relative to the minor child.

[2] The court found that at the time of the dissolution, the Maplewood property generated $2000 per month in rental income.

[3] The court found that the marriage had broken down irretrievably and declined to attribute the cause for the breakdown to either party.

## I

The defendant first claims that the court improperly found the value of the premarital property owned by the plaintiff. Specifically, the defendant argues, in her principal brief, that the court's finding that $395,000 of the marital estate was the plaintiff's premarital property was clearly erroneous. She further argues, *in her reply brief,* that the court failed to include her nonmonetary contributions, as required by General Statutes § 46b-81, that helped the Maplewood property appreciate during the marriage. We conclude that with respect to the former argument, the court's finding was not clearly erroneous and that, with respect to the latter, the defendant impermissibly raised an argument for the first time in her reply brief. Thus, we decline to review the latter argument.

The following additional facts are necessary for our discussion. The plaintiff presented the testimony of Ginger Chick, a real estate appraiser. Counsel for the defendant stipulated to her qualifications as a competent real estate appraiser. Chick testified that she performed an appraisal of the Maplewood property. Chick concluded that the fair market value of the Maplewood property was $545,000. The plaintiff's financial affidavit indicated a mortgage in the amount of $150,000 on the Maplewood property. Using these two figures, the court found the plaintiff's equity in the Maplewood property to equal $395,000.

### A

In her principal brief, the defendant argued that neither party presented evidence as to the value of the plaintiff's assets at the time of the marriage. She further contended that the court's finding was inconsistent with the plaintiff's bankruptcy filing a few years after the marriage and with the plaintiff's financial affidavit prepared in connection with the parties' prior dissolution

action.[4] Finally, the defendant maintained that even if the court intended to refer to the plaintiff's gross assets, rather than his net assets, his prior affidavits show such assets in the amount of approximately $220,000. The defendant concluded that the court's finding with respect to the plaintiff's premarital assets was unsupported by the record, and, therefore, clearly erroneous.

In his brief, the plaintiff responded to the defendant's arguments, claiming that the court, in its memorandum of decision, referred not to the value of the Maplewood property at the time of the marriage but, rather, to its value at the time of the dissolution. In support of this position, the plaintiff cites the following language from the court's memorandum of decision: "The *current* approximate net value of the assets of this marital estate is $1,611,000. *Of this*, approximately $395,000 can be construed as premarital property attributable to the plaintiff . . . ." (Emphasis added.) Furthermore, earlier in its decision, the court specifically found that "the current fair market value of the property is $545,000. There are mortgages on the property which total $150,000. The equity in the property is $395,000."

"Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Chyung* v. *Chyung*, 86 Conn. App. 665, 667–68, 862 A.2d 374 (2004), cert. denied, 273 Conn. 904, 868 A.2d 744 (2005); see also

---

[4] The parties reconciled and withdrew the first dissolution action.

*Aarestrup* v. *Harwood-Aarestrup*, 102 Conn. App. 74, 77, 924 A.2d 873 (2007).

We agree with the plaintiff that the court found the value of the Maplewood property, which the court found to be a premarital asset, as of the time of dissolution, rather than its value at the time of the parties' marriage. Furthermore, on the basis of Chick's testimony and the plaintiff's financial affidavit, there was evidence in the record to support this finding. We conclude, therefore, that the court's finding that the Maplewood property had a value of $395,000 was not clearly erroneous.

B

We next turn to the defendant's claim, raised for the first time in her reply brief, that the court improperly failed to include nonmonetary contributions[5] as required by § 46b-81. Specifically, the defendant relies on *O'Neill* v. *O'Neill*, 13 Conn. App. 300, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988), to support the claim that the court failed to consider her nonmonetary contributions, such as caring for the minor child.[6] She argues that these contributions allowed the plaintiff to retain and to develop the Maplewood property and, therefore, helped its value to appreciate.

[5] We note that whether a party made a contribution to the acquisition and preservation of property presents a question of fact. *O'Neill* v. *O'Neill*, 13 Conn. App. 300, 307, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988); see also *Rolla* v. *Rolla*, 48 Conn. App. 732, 738, 712 A.2d 440, cert. denied, 245 Conn. 921, 717 A.2d 237 (1998).

[6] In *O'Neill*, we observed that "an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary care taking responsibilities"; *O'Neill* v. *O'Neill*, supra, 13 Conn. App. 311; and that "a determination of each spouses' contribution within the meaning of General Statutes § 46b-81 includes nonmonetary as well as monetary contributions." (Internal quotation marks omitted.) *O'Neill* v. *O'Neill*, supra, 312.

The defendant failed to raise the issue of nonmonetary contributions in her principal brief. She focused solely on the fact that there was no evidence in the record to support the court's finding regarding the value of the Maplewood property at the time of the marriage. Only in response to the plaintiff's brief did she raise the issue of nonmonetary contributions. "It is a well established principle that arguments cannot be raised for the first time in a reply brief. . . . Our practice requires an appellant to raise claims of error in his original brief, so that the issue as framed by him can be fully responded to by the appellee in its brief, and so that we can have the full benefit of that written argument. Although the function of the appellant's reply brief is to respond to the arguments and authority presented in the appellee's brief, that function does not include raising an entirely new claim of error." (Citation omitted; internal quotation marks omitted.) *State* v. *Garvin*, 242 Conn. 296, 312, 699 A.2d 921 (1997); see also *Dinan* v. *Marchand*, 279 Conn. 558, 566 n.9, 903 A.2d 201 (2006) (claim raised for first time in reply brief is unpreserved and appellate court will decline review); *Calcano* v. *Calcano*, 257 Conn. 230, 244, 777 A.2d 633 (2001); *Kelley* v. *Tomas*, 66 Conn. App. 146, 163, 783 A.2d 1226 (2001). Accordingly, we decline to review the defendant's claim that the court failed to consider her nonmonetary contributions when it found the value of the plaintiff's premarital asset.[7]

---

[7] We note that the court indicated in its memorandum of decision that it had "considered all the relevant statutory criteria, including the length of the marriage, the age, health, station, occupation, assets, amount and sources of income, skills, employability, debt, *nonmonetary contributions*, acquisition and preservation of the estate, needs of each of the parties and the opportunity of each for future acquisition of capital assets and income and all other criteria set forth in General Statutes §§ 46b-62, 46b-81, 46b-82, 46b-84, 46b-215b, 46b-56c and the child support guidelines." (Emphasis added.) We observe that a "judge is presumed to have performed [her] duty unless the contrary appears." (Internal quotation marks omitted.) *Miller* v. *Miller*, 22 Conn. App. 310, 314, 577 A.2d 297 (1990). We must, therefore, operate from the assumption that the court did in fact consider nonmonetary contributions when it crafted its financial orders.

## II

The defendant next claims that the court abused its discretion by ordering time limited alimony. Specifically, she argues that the record does not reveal a factual basis or rationale for a nonmodifiable award of two years of alimony.[8] We are not persuaded.

The following additional facts are necessary for our discussion. The defendant obtained her bachelor's degree, graduating summa cum laude. She further earned a master's degree in optics and a master of business administration degree. Her employment history and earnings history "have shown a clear, declining trend over the last ten years." The court stated that *"at the current time, her ability to maintain any significant employment appears to be seriously compromised."* (Emphasis added.) The court further indicated that although her present prospects for steady, gainful employment appeared bleak, it was "confident, though, that once this litigation and all its ramification are behind the defendant, she will be better able to regain her focus and provide herself a reasonable income . . . ."

As a preliminary matter, we set forth our standard of review. "An appellate court will not disturb a trial

---

Finally, we point out that the defendant failed to request an articulation of the court's decision with respect to the issue of nonmonetary contributions. Even if this claim had been presented properly for our review, we are left with an unclear record with respect to the defendant's claim that nonmonetary contributions were not considered properly by the trial court. "Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court, either on its own or in response to a proper motion for articulation, any decision made by us respecting this claim would be entirely speculative." (Internal quotation marks omitted.) *Gallant* v. *Esposito*, 36 Conn. App. 794, 798, 654 A.2d 380 (1995).

[8] We decline to consider the defendant's claim, raised for the first time in her reply brief, that the court abused its discretion by awarding only $250 per week, or $12,000 annually, in alimony for the reasons set forth in part I B.

court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Rivnak* v. *Rivnak*, 99 Conn. App. 326, 328, 913 A.2d 1096 (2007). This standard "reflects the sound policy that the trial court has the unique opportunity to view the parties and their testimony, and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, including such factors as the demeanor and the attitude of the parties." (Internal quotation marks omitted.) Id., 329.

We recently have stated: "Time limited alimony is often awarded. [Our Supreme Court] has dealt with challenges to an award of time limited alimony on numerous occasions. . . . The trial court does not have to make a detailed finding justifying its award of time limited alimony. . . . Although a specific finding for an award of time limited alimony is not required, the record must indicate the basis for the trial court's award. . . . There must be sufficient evidence to support the trial court's finding that the spouse should receive time limited alimony for the particular duration established. If the time period for the periodic alimony is logically inconsistent with the facts found or the evidence, it cannot stand. . . . In addition to being awarded to provide an incentive for the spouse receiving support to use diligence in procuring training or skills necessary to attain self-sufficiency, time limited alimony is also appropriately awarded to provide interim support until a future event occurs that makes such support less necessary or unnecessary." (Citations omitted; internal quotation marks omitted.) Id., 310; *Nashid* v. *Andrawis*, 83 Conn. App. 115, 122–23, 847

A.2d 1098, cert. denied, 270 Conn. 912, 853 A.2d 528 (2004).

In the present case, the court did not make a detailed finding with respect to the time limited alimony award. The question, therefore, is whether the record indicates a basis for this durational order. We conclude that the record does contain such a basis, and, therefore, the court did not abuse its discretion.

The defendant testified that at the time of the trial, she was prescribed two medications for the treatment of depression and one for attention deficit disorder. She stated that she suffered from stress related dysthymia[9] and that her first "depressive crash" was in 1994, when the plaintiff left with their minor child. She previously had been treated by a psychiatrist during dissolution proceedings with her first husband. At the conclusion of those proceedings, however, her symptoms went away. The defendant later testified that stress triggers depression.

The defendant described the divorce proceedings with the plaintiff as being on "another order of magnitude" as compared to her prior divorce. The defendant further testified that she perceived her depression as stemming from the "hate driven hostility" of the plaintiff during the divorce. She indicated that as a result of this divorce related stress, she would not be able to complete a twenty hour work week. She acknowledged that medications benefited her condition and that she hoped to obtain employment in another field at the conclusion of the legal proceedings. She doubted, however, that in the near future, she would have the ability to work in the same capacity as her prior positions. The defendant opined that the she did not think she would be able to be employed in 2006 or 2007, despite

---

[9] The defendant testified that "dysthymia" is a medical term meaning sadness.

receiving psychiatric care. Finally, the defendant stated that her court appearances were so stressful and debilitating that it would take her one week to recover from them.

After a thorough review, we conclude that the record contains a sufficient basis to support the court's award of time limited alimony. We note that the defendant failed to present expert testimony regarding her medical condition. The only evidence regarding the issue of her depression came from the defendant herself.[10] In other words, the court was not presented with an independent evaluation of the severity of the defendant's depression. Accordingly, the court, on the basis of its observations, was free to make its own determination as to the validity of the defendant's claims regarding the severity, duration and frequency of her symptoms and illness.[11]

The court determined that the defendant's inability to maintain significant employment was a result, in part, of both the "rigors of [the] relentless litigation" as well as the toxic nature of the parties' relationship. Nevertheless, the court's determination that the defendant, following the conclusion of the litigation, would be able to regain her focus and to provide herself with a reasonable income finds support in the record. The court issued its memorandum of decision on July 24, 2006,

[10] It is well established that "[t]he trial court . . . is not bound by the uncontradicted testimony of any witness . . . and is in fact free to reject such testimony. . . . [T]he trial court is free to accept or reject, in whole or in part, the evidence presented by any witness, having the opportunity to observe the witnesses and gauge their credibility. . . . This court defers to the trial court's discretion in matters of determining credibility and the weight to be given to a witness' testimony. . . . We cannot retry the matter, nor can we pass on the credibility of a witness." (Citations omitted; internal quotation marks omitted.) *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 878–79, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001).

[11] We note that in *Roach* v. *Roach*, 20 Conn. App. 500, 568 A.2d 1037 (1990), a psychiatrist testified that as a result of her mental illness, the defendant was not employable. Id., 506. In that case, we concluded that the court's award of three years of alimony constituted an abuse of discretion. Id., 507.

and awarded alimony until July, 2008. This comports with the defendant's testimony that she would not be able to work in 2006 and 2007.[12] The decision affords the defendant a period of time for rest and recovery from the tumultuous period resulting from the divorce action. Moreover, the defendant's testimony reveals a pattern of increased stress related depression during the periods of divorce litigation and interactions with the plaintiff. The court reasonably expected both of these stressors or triggers to diminish and to abate following the dissolution of the parties' marriage. See, e.g., *Nashid* v. *Andrawis*, supra, 83 Conn. App. 123–24 (court free to make reasonable inferences from testimony when ordering time limited alimony).

The defendant failed to request an articulation as to why the court ordered time limited alimony. We conclude, however, that such an order was appropriate to provide interim support until she recovered from the stress induced depression caused by the divorce proceedings. Such an order is logically consistent with the evidence and facts found and, therefore, is proper. *Henin* v. *Henin*, 26 Conn. App. 386, 392, 601 A.2d 550 (1992); see also *Szegda* v. *Szegda*, 97 Conn. App. 426, 433, 904 A.2d 1266 (record disclosed evidence supporting reasonable rationale for award of time limited alimony), cert. denied, 280 Conn. 932, 909 A.2d 959 (2006). In other words, the rationale behind the court's award of time limited alimony is found in the record; following the completion of the divorce proceedings, the stress on the defendant will diminish and, as a result, the symptoms of her depression will subside. Although she now argues that two years is insufficient to ensure her recovery to the point of obtaining gainful employment, we cannot conclude, on the basis of this record, that

[12] The defendant failed to produce any testimony, expert or her own, that she would be unable to obtain employment after 2007.

the court abused its discretion in concluding to the contrary.

The judgment is affirmed.

In this opinion the other judges concurred.